466 A.2d 696

**COMMONWEALTH of Pennsylvania**

v.

**Stuart S. CARLITZ, Appellant.**

Superior Court of Pennsylvania.

Submitted April 19, 1983.

Filed Oct. 7, 1983.

Louis Lipschitz, Philadelphia, for appellant.

Patricia Ann Zaffarano, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before WICKERSHAM, ROWLEY and WATKINS, JJ.

WATKINS, Judge:

This is a direct appeal from convictions of burglary, criminal attempt and criminal conspiracy. In a remarkably able presentation, the appellant, Stuart S. Carlitz, argues that the court below erred in failing to charge the jury on withdrawal from the conspiracy; that trial counsel was ineffective for failing to present the testimony of a known, available and corroborative witness; that the evidence was insufficient to sustain the verdict warranting dismissal; and finally, that the verdict was contrary to the weight of the evidence.

The significant issues are the sufficiency of the evidence, assuming this point was preserved below or may now be presented because trial counsel was ineffective in failing to preserve it and whether the verdict was contrary to the weight of the evidence. Because of the importance of corroboration to these issues, the failure to present the known, available and corroborative witness takes on added significance.

In summary, we conclude that the withdrawal defense lacked merit, that a sufficient charge on withdrawal was given, that any defect therein was waived and that such waiver did not constitute ineffective assistance of counsel. In addition, while troubled by the verdict, we conclude that the evidence was barely sufficient to allow a jury to return a verdict of conviction and was not against the weight of the evidence. Finally, we conclude that the failure of

defense counsel, given the particular characteristics of this case and the importance of corroboration in assessing even the sufficiency of the evidence, to present a known, available and corroborative witness favorable to Carlitz was, if the witness and her testimony were known to counsel, ineffective assistance warranting a new trial. If such witness or her testimony was unknown to counsel, we direct the trial court to hold an evidentiary hearing to determine whether counsel's assistance was or was not ineffective.

Before exploring these matters in detail, we first state the facts of the case, viewed as we must, in the light most favorable to the verdict winner, the Commonwealth. *Commonwealth v. Sinwell*, 311 Pa.Superior Ct. 419, 457 A.2d 957 (1983); *Commonwealth v. Barnes*, 310 Pa.Superior Ct. 480, 456 A.2d 1037 (1983).

Carlitz was owed a debt by one Christopher Kershner. About a week earlier, Carlitz saw Kershner at a friend's house and Kershner invited Carlitz to stop over to see Kershner's one-year-old baby. Kershner told Carlitz to stop by on a Monday, as this was probably the best time to catch him at home.

On Monday, April 12, 1982, at about "noontime" Kershner was at home in the upstairs watching television with his one-year-old daughter, when he heard a knock at the door. He didn't answer, however, "because you never know who it is." Instead of answering, Kershner looked out the bathroom window overlooking his driveway and saw a car he did not recognize. "(I)t was a Chevrolet, it was sort of minty-lime green, it's an unusual color." Kershner next testified that the lime green automobile then pulled out of the driveway.

About twenty minutes later, the car returned, and then again pulled out of the driveway. "After it pulled out, I heard a noise downstairs; it was a shook-type noise." Kershner then called the police, who arrived and apprehended appellant's alleged co-conspirator (hereinafter referred to as Berk) within a very short period of time. While

nothing was taken, "several drawers were pulled out and a cabinet was opened."

Appellant was not apprehended at the scene of the crime. Rather, at about 12:45 P.M., a "short" distance from the scene of the crime, a police officer in an unmarked car spotted the lime-green Chevrolet moving in what the arresting officer called a "circling pattern". Carlitz was the driver of this vehicle which was then stopped and he was arrested.

A search of the trunk of this car was later conducted and a single left-handed black glove was found. Earlier, the right-handed mate to this glove had been found in Berk's pants pocket when he was arrested. Both of these gloves admittedly belonged to Carlitz.

The Commonwealth also presented the testimony of Berk. Berk, however, was an admitted drug addict and required methadone maintenance to control his habit. Moreover, Berk admitted that he was, to use his own phrase, "in a state of altered consciousness" for about two days prior to and during the events *sub judice*. Further, while Berk had testified that he had not taken any pills the day he was testifying, there was direct and uncontradicted evidence that Berk was on drugs while testifying. Also, Berk himself admitted that the break-in was a "spur of the moment thing", thus negating the conspiracy and agreement to which Berk also testified. Finally, Berk could not point to a single thing Carlitz ever said in agreeing to the alleged criminal acts. Rather, only Carlitz's actions, as perceived by an admitted drug addict at the time in a "state of altered consciousness" is presented as evidence of Carlitz's agreement to the alleged conspiracy.

Appellant contended that he had gone to the Kershner home only to collect an admittedly owed debt and had made no agreement to violate any law, with Berk or otherwise.

The appellant claims that the court failed to instruct the jury sufficiently with regard to his defense of withdrawal from any conspiracy. In particular, when at the Kershner

home the second time, and when no one had answered the door and Carlitz realized that Berk was attempting to break in, Carlitz testified that he then said to Berk, "What the hell are you doing?" and Berk responded: "I'm going in." Then Carlitz said, "Well, I'm getting out of here, I won't have nothing to do with this." Carlitz testified that he then got in his car and drove away.

■ Were the facts testified to believed, this defense lacked merit. We have held that in order for a withdrawal from a conspiracy "to be legally sufficient, it must occur before the commission of the crime becomes so imminent that avoidance is out of the question." *Commonwealth v. Laurin,* 269 Pa.Superior Ct. 368, 409 A.2d 1367 (1979). In this case, the crime was in progress at the time Carlitz allegedly attempted his withdrawal. That is clearly too late.

■ Thus, the withdrawal defense, as a matter of law, lacked merit. It follows, of course, that any charge on a meritless defense was sufficient as far as the defendant-appellant is concerned.

■ Finally, it appears that trial counsel made a conscious decision as a matter of trial strategy not to push for any further charge. Any defect in the charge given was thus waived and that waiver was not ineffective assistance of counsel for lack of prejudice to Carlitz.

With regard to the sufficiency of the evidence,[1] we find ourselves much in the same situation as the court in *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976). The witness in that case was also an alleged co-conspirator and was mentally deranged. In this case, similarly, the alleged co-conspirator witness was "in an altered state of consciousness." The difficulty with sustaining this ground for objection to the sufficiency of the evidence is that in this case, as in *Farquharson,* supra, there was independent corroboration of the events as testified to by

1. This issue was preserved. *Commonwealth v. Holmes,* 315 Pa.Superior Ct. 256, 461 A.2d 1268 (1983.)

the mental patient or drug addict respectively. In particular, Berk's grandmother testified that Carlitz was present when Berk came to her home to secure the screwdrivers and when Berk said, in Carlitz's presence, that he (Berk) was "taking them because I have to fix something at Stuart's house." The implication that Carlitz was aware of Berk's possession of the screwdrivers is entirely contrary to Carlitz's version of this episode which, in turn, tends to support Berk's version.

The second corroborating item of evidence is the glove admittedly belonging to Carlitz which, according to Berk, was given to Berk by Carlitz "for the purpose of not leaving any fingerprints."

Since a mentally deranged person's testimony was sufficiently corroborated in *Farquharson,* and since there is corroboration of the testimony of the drug addict in this case, it is tempting to conclude that like results should follow without more. However, such a conclusion is, at least, premature since the unresolved question is whether the above two items *sufficiently* corroborated Berk's testimony—and sufficiently not just to allow a jury to conclude that Berk's version was perhaps as likely or a little more likely true than Carlitz's, but further to allow a jury to conclude that Carlitz had agreed—had become part of the conspiracy—"beyond a reasonable doubt".

There is no question that this is a heavy burden—and designedly so. The burden of proving each element "beyond a reasonable doubt" is of constitutional dimension. *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This heavy burden of proof implements the also constitutionally-mandated presumption of innocence.

Nonetheless, it is the jury, and not this appellate court [2] which must be convinced "beyond a reasonable doubt". We are authorized to reverse only verdicts which must have been based on conjecture or speculation, *Farquharson,* for lack of pertinent evidence in the record.

**2.** 1 Wharton's Criminal Evidence, Section 11 at 16.

It can hardly be said that Reba Berk's testimony corroborating Carlitz's knowledge of the screwdrivers (which were in fact later used by Berk to break in and which Carlitz vehemently denied any knowledge at all of) left the jury to speculation alone. We thus conclude that the evidence presented was barely sufficient to permit a jury to conclude that Carlitz conspired with Berk.[3]

We come then to the question whether the verdict was against the weight of the evidence. Carlitz bears a heavy burden in sustaining such contentions. As we noted in *Commonwealth v. Hennemuth*, 294 Pa.Superior Ct. 360, 439 A.2d 1241 (1982):

> Before a new trial can be awarded on the grounds that the verdict is against the weight of the evidence, it must appear from the record that the verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity. *Commonwealth v. Barnhart*, 290 Pa.Superior Ct. 182, 185, 434 A.2d 191, 192 (1981).

■ While we confess that we are troubled by the verdict in this case, we cannot conclude that this heavy burden has been discharged without substituting our own judgment for the jury's, a course plainly beyond our reach.

■ That brings us to the fourth and final issue in this case, to wit: defense counsel's failure to call an allegedly known and available witness who would have corroborated, at least in part, appellant's version of the events by testifying that Berk had admitted to her that Carlitz had had nothing to do with the burglary and that Berk had entered

---

**3.** In *Commonwealth v. Azim*, 313 Pa.Superior Ct. 310, 459 A.2d 1244 (1983), we reviewed at some length a similar situation in which the driver claimed that he was only hired to drive and made no agreement sharing any criminal purposes. We noted: Among those circumstances relevant to proving conspiracy are association with alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and, at times, participation in the object of the conspiracy. Of these four circumstances, three are plain by admission on this record.

the Kershner home on impulse while under drug influence and without any idea of where he was or what he was doing.

Corroboration, in this particular case, was extraordinarily important. Berk might well have been altogether unbelievable without the corroboration provided by his grandmother and the glove. See *Farquharson*, supra.

As such, the failure to call Carlitz's corroborating witness left his testimony alone arrayed against both the circumstantial and direct testimony presented by the Commonwealth. If Carlitz's attorney knew of this witness, we hold that failure to call her was ineffective assistance of counsel.[4] In terms of the test of *Commonwealth ex rel Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), there simply could not be, in our view, any rational basis for failing to aid Carlitz's credibility when credibility was the determining factor in the case.

Whether counsel for Carlitz in fact knew of this evidence or not is not reflected in the record. The Commonwealth therefore argues that we cannot reach such an issue because it was Carlitz's burden to put such evidence into the record, citing *Commonwealth v. Ross*, 273 Pa.Superior Ct., 67, 416 A.2d 1092 (1979). When, however, the charge is ineffective assistance of counsel, such a record can hardly be made while the case is in the care of the allegedly ineffective counsel. We have many times noted that a defendant is only obliged to raise claims of ineffective assistance of counsel at his first opportunity with counsel different from that allegedly ineffective. See *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). As applied to this case, the proper rule was well-stated in *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1977):

**4.** We do not decide that it would be ineffective to fail to find such a witness. If diligent efforts were made to locate pertinent evidence, the failure to locate all of it would not be ineffective assistance of counsel. *Commonwealth v. Bailey*, 480 Pa. 329, 390 A.2d 166 (1978).

Where, on the other hand, it is impossible to tell from the record whether or not the action of trial counsel could have had a rational basis, the appellate court will vacate the judgment, at least for the time being, and remand for an evidentiary hearing at which trial counsel may state his reasons for having chosen the action taken.

In this case, given the peculiar value of corroboration, we hold that if trial counsel knew of Debby Lane's corroborative testimony, a new trial must be awarded. If not, the trial court on remand will be free to determine whether counsel was ineffective or not, for example, in investigating for witnesses.

Judgment of sentence vacated; and the case remanded to the court below for an evidentiary hearing. Jurisdiction is not retained.