COMMONWEALTH of Pennsylvania,
Appellee

v.

Marcus LLOYD, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 27, 2004.
Filed June 27, 2005.

Norman O. Scott, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: BENDER, McCAFFERY, and POPOVICH, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Marcus Lloyd, appeals from a judgment of sentence entered in the Philadelphia County Court of Common Pleas after a jury found him guilty of two counts of murder in the first degree,[1] one count each of robbery[2] and criminal conspiracy,[3] and sentenced him to death. As a result of his first appeal directly to the Pennsylvania Supreme Court challenging the imposition of his death sentences, Appellant was resentenced to consecutive life sentences. Now, Appellant specifically asks us to determine whether there was sufficient evidence to sustain a first degree murder conviction when Appellant had not been physically present at the time of the murder, and whether the trial court erred in failing to make record findings of fact to support its denial of Appellant's motion for a new trial. Finally, Appellant asks us to determine whether two consecutive life sentences constitute a harsher sentence than two concurrent death sentences, which the sentencing court imposed in what Appellant characterizes as error. Upon careful review of the record and having given due consideration to Appellant's arguments, we hold that the trial court acted properly in the challenged instances and the sentencing court did not err. Thus, we affirm.

¶ 2 The facts of this case were set forth by the trial court as follows:

Appellant, Marcus Lloyd, and three confederates, Herbert Blakeney, Gregory Miller, and Kenneth Miller, were arrested and charged with two counts of first degree murder, robbery, conspiracy, and related offenses, pertaining to the robbery and shooting deaths of Charles Love, Esquire, who had been co-defendant, Gregory Miller's attorney, and Mr. Brian Barry, who was an assistant/paralegal to attorney Charles Love. The criminal incident occurred on February 25, 1998.

Co-conspirator, Herbert Blakeney[,] entered into a negotiated guilty plea agreement with the Commonwealth, whereby he pled guilty to two counts of first degree murder, and related charges, and received two concurrent sentences of life imprisonment. Blakeney testified for the Commonwealth at trial, and[ ] admit-

---

1. 18 Pa.C.S.A. § 2502.

2. 18 Pa.C.S.A. § 3701.

3. 18 Pa.C.S.A. § 903.

ted to being the actual shooter of the two victims.

The evidence at trial established that one of the murder victims, Charles Love, Esquire, had represented co-defendant, Gregory Miller[,] in various matters, and had obtained monies for Gregory Miller[ ] as a result of civil claims. The entire sums recovered could not be distributed to Gregory Miller[ ] because of outstanding Family Court "support" orders and liens. In claim [sic] against the City of Philadelphia, Mr. Love had recovered a sum of $15,000 for his client, Gregory Miller. A "Statement of Distribution"[ ] indicated that after various deductions, Gregory Miller was to receive the amount of $5,915.10. However, Gregory Miller had also owed child support arrearages, and had agreed that the sums recovered were to be applied to the reduction of the amount of the arrearages.

On February 25, 1998, Appellant and Kenneth Miller visited Herbert Blakeney and told him that Gregory Miller wanted to speak to all of them about a "stick-up". The three of them then proceeded to Gregory Miller's home, where the group discussed Gregory Miller's plan to have them rob and murder Mr. Love[ ] and Mr. Brian Barry. Gregory Miller explained that he wanted the victims robbed and killed because he had not received the expected amount of funds from attorney Love.

Gregory Miller gave Appellant a .38 caliber handgun and some telephone wire, and instructed Appellant to conceal the weapon until the group was inside Mr. Love's law office. Gregory Miller directed that Brian Barry was to be tied up. He also told Blakeney to use the gun to force Mr. Love to write a check for $10,000.00. He told Appellant to take the check to a bank to have it cashed, and he instructed Kenneth Mil-

ler to shoot both victims once [Appellant] cashed the check. Gregory Miller told his cohorts to "leave no witnesses". Appellant, Kenneth Miller, and Herbert Blakeney then went to Mr. Love's office. Gregory Miller did not go with them to the office. Once at the office, Blakeney confronted Mr. Love with the handgun and demanded that he write a check for $10,000.00. Appellant took Mr. Brian Barry into a storage closet, laid him facedown on the floor, and "hog-tied" him. Appellant then took the check to a nearby bank, in an attempt to cash it. Herbert Blakeney took $1,500.00 from Mr. Love's pocket, and he and Kenneth Miller took turns keeping watch at a window, and holding Mr. Love at gunpoint, to ensure that he could answer the phone.

Appellant was unable to have the check cashed at the bank[ ] because of inadequate identification. [Appellant] returned to the law office, and said to Mr. Love: "You know you are a dead motherfucker now." Blakeney then gave the gun to Kenneth Miller while he (Blakeney) took Mr. Love into the storage closet and laid him on the floor next to Mr. Barry. Kenneth Miller gave the gun back to Blakeney and urged him to kill the victims, saying, "You are a bitch ass nigger, if you don't kill the motherfuckers". Blakeney subsequently then shot both victim's [sic] in the head. [Appellant], Blakeney and Kenneth Miller then split the $1,500.00 taken from the robbery and went shopping. Blakeney subsequently returned the gun to Gregory Miller, but did not give him any money, telling him that they had been unable to cash the check, and omitting telling him of the $1,500.00 taken from Mr. Love.

(Trial Court Supplemental Opinion filed January 20, 2004, at 2–4) (internal citations omitted).

¶ 3 Blakeney pled guilty to two counts of murder and agreed to testify at Appellant's trial in exchange for concurrent life sentences. The Honorable James F. Fitzgerald, III, presided over Appellant's jury trial and the subsequent penalty phase, after which the jury returned verdicts of death for each of Appellant's murder convictions. On December 20, 1999, the sentencing court formally imposed concurrent death penalty sentences for the murder convictions and imposed concurrent sentences of five (5) to twenty (20) years' imprisonment for the robbery conviction and twenty (20) to forty (40) years' imprisonment for the criminal conspiracy conviction.

¶ 4 Appellant's counsel filed post-sentence motions on December 28, 1999, requesting a judgment of acquittal and/or arrest of judgment. Therein, counsel alleged:

> The evidence was insufficient to sustain the verdict of first degree murder, the verdict was contrary to the weight of the evidence and the verdict was contrary to the law. In support thereof, the sole evidence at trial was based upon Commonwealth witness Herbert Blakeney who admitted from the stand that he was a chronic liar. There was no physical evidence to support the verdict, and the statement of [Appellant] which was admitted into evidence supported [Appellant's] theory of the case that he did not have knowledge of the murders.

(Post-sentence motions, 12/28/99, ¶ 4).

¶ 5 Upon request, trial counsel was permitted to withdraw, and Richard E. Johnson, Esquire was appointed as replacement counsel. On August 23, 2000, Attorney Johnson filed amended post-sentence motions, the trial court heard oral argument thereon, and the court denied Appellant's

motions for a new trial and in arrest of judgment.

¶ 6 Appellant appealed his judgment of sentence to the Pennsylvania Supreme Court, and on May 29, 2002, the Court granted his petition to remand for resentencing and remanded for a new sentencing hearing.[4] Thereafter, Attorney Johnson was permitted to withdraw and present counsel was appointed. On August 20, 2003, the Honorable Jane Cutler Greenspan conducted a sentencing hearing, following which she imposed consecutive terms of life imprisonment for the two murder convictions. The sentences for the robbery and criminal conspiracy convictions remained the same and were ordered to run concurrently with the life sentences. This timely appeal followed wherein Appellant raises the following issues:

DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE TO PROVE [APPELLANT] GUILTY OF MURDER IN THE FIRST DEGREE WHERE SOMEONE OTHER THAN [APPELLANT] ADMITTED TO THE KILLINGS AND THIS [APPELLANT] WAS NOT PHYSICALLY PRESENT AT THE TIME OF THE KILLING?

DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING [APPELLANT'S] MOTION FOR A NEW TRIAL BASED UPON THE COMMONWEALTH'S FAILURE TO PRESENT EVIDENCE OF SUFFICIENT WEIGHT IN THAT THE COURT FAILED TO ARTICULATE ANY FINDINGS OF FACT ON THE RECORD TO SUPPORT ITS HOLDING?

---

4. There was no opinion accompanying the one sentence Supreme Court *per curiam* order, and the petition to remand for resentencing is not included in the certified record.

DID THE SENTENCING COURT ON REMAND ERR IN SENTENCING [APPELLANT] TO CONSECUTIVE SENTENCES WHERE THE ORIGINAL SENTENCES WERE TO BE SERVED CONCURRENTLY?

(Appellant's Brief at 4).

■ ¶ 7 Appellant first argues that the Commonwealth presented insufficient evidence to sustain the convictions for first degree murder. Specifically, he claims that the Commonwealth failed to prove that he had the specific intent to kill because he was not present when co-defendant Blakeney actually shot the two victims. Appellant contends that by leaving the scene, he successfully withdrew from any conspiracy. (Appellant's Brief at 11–12). This contention is totally without merit.

■ ¶ 8 On a challenge to the sufficiency of the evidence to support a conviction,

we review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the verdict winner. *Commonwealth v. Rivera,* 565 Pa. 289, 295, 773 A.2d 131, 135 (2001); *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003). A conviction will be upheld if after review we find that the jury could have found every element of the crime beyond a reasonable doubt. *Bullick,* 830 A.2d at 1000. We may not weigh the evidence or substitute our judgment for that of the fact-finder. *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001), *appeal denied,* 569 Pa. 716, 806 A.2d 858 (2002). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Commonwealth v. Reaser,* 851 A.2d 144, 147 (Pa.Super.2004). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Sheppard,* 837 A.2d 555, 557 (Pa.Super.2003)(citing *Commonwealth v. Cassidy,* 447 Pa.Super. 192, 668 A.2d 1143, 1144 (1995)). The Commonwealth may prove each element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *DiStefano,* 782 A.2d at 582. Furthermore, the entire record must be evaluated and all evidence actually received must be considered. *Id.* Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence. *Commonwealth v. Dougherty,* 580 Pa. 183, 191–92, 860 A.2d 31, 36 (2004).

*Commonwealth v. Kimbrough,* 872 A.2d 1244, 1250–51 (Pa.Super.2005) *(en banc ).*

¶ 9 The law is equally settled that a person will not be considered "an accomplice in an offense committed by another person if he terminates his complicity prior to the commission of the offense *and* (i) wholly deprives it of effectiveness in the commission of the offense; or (ii) gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense." 18 Pa.C.S.A. § 306(f)(3)(i)-(ii) (emphasis added). Finally, "if an individual abandons the agreement, the conspiracy is terminated as to him *only if and when* he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein." 18 Pa.C.S.A. § 903(g)(3) (emphasis added).

¶ 10 In the case *sub judice,* Appellant's brief is utterly lacking in either citations to the notes of testimony or any other refer-

ence to any *evidence* establishing that Appellant successfully withdrew from the conspiracy. Rather, Appellant lamely relies on the trial testimony of co-conspirator Herbert Blakeney, who admitted that he was alone in the office when he shot the two victims. (Notes of Testimony ("N.T."), 9/21/99, at 129). However, Blakeney also testified that after shooting the victims he went outside and saw Appellant and co-conspirator Kenneth Miller down the block, and the three then divided the stolen money and together went shopping. *Id.* at 130. This testimony belies Appellant's contention that he had withdrawn from the conspiracy. In addition, Appellant both failed to notify law enforcement authorities and failed to make any effort to prevent the commission of the crime. As a result, Appellant's first claim is unavailing.

¶ 11 In his second issue, Appellant complains that the verdicts were contrary to the weight of the evidence adduced at trial because the only witness who testified and implicated Appellant was Blakeney, who admitted that he himself was the shooter. Relying upon *Commonwealth v. Brown,*[5] Appellant also asserts that he is entitled to a new trial because the trial

judge erred by not placing on the record his reasons and a factual basis for denying Appellant's request for a new trial.[6] (Appellant's Brief at 12–13). We disagree.

¶ 12 On a claim that the verdict is against the weight of the evidence, our review is limited to determining whether the trial court abused its discretion in denying the appellant's motion for a new trial. *Commonwealth v. Sullivan,* 820 A.2d 795, 805 (Pa.Super.2003).

A trial court will grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is *so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (1985) (citations omitted, emphasis added). A motion for a

---

5.  538 Pa. 410, 648 A.2d 1177 (1994).

6.  In *Brown,* the Pennsylvania Supreme Court explained that an appellate court is limited on a weight of the evidence challenge to a review of the trial judge's reasons and factual basis for denying the defendant's request for a new trial to determine whether there was an abuse of discretion. *Id.* at 435–436, 648 A.2d at 1189–1190. Here, while Appellant is correct that Judge Fitzgerald did not state his reasons for denying the post-sentence motions at the August 23, 2000 hearing, he did indicate the reasons in both his opinion and supplemental opinion filed after resentencing as follows:

    Likewise, the verdicts were not so contrary to the evidence as to shock one's sense of justice so as to make the award of a new trial imperative. [*Commonwealth v. Carlitz,* 319 Pa.Super. 580, 466 A.2d 696 (1983)].

(Trial Court Opinion, filed November 28, 2000, at 6).

Likewise, the verdicts were not against the "weight" of the evidence. A claim that the defendant is entitled to a new trial on such a basis is addressed to the discretion of the trial judge. The test is whether the verdict is so contrary to the evidence[ ] so as to shock the conscience, such as to make the award of a new trial imperative, so that "right" may be given another opportunity to prevail [*Commonwealth v. Whiteman,* 336 Pa.Super. 120, 485 A.2d 459 (1984) ]. This Court finds no basis to conclude that the evidence was so contradictory, or incredible, such as to warrant the granting of a new trial.

(Trial Court Supplemental Opinion, filed January 20, 2004, at 9). Therefore, we may proceed with our review.

new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence.

*Brown, supra* at 435–436, 648 A.2d at 1189.

¶ 13 Upon a thorough review of the record, the briefs of the parties, and Judge Fitzgerald's opinions, we conclude that the trial court acted within its discretion when it determined that the verdicts were not against the weight of the evidence and denied Appellant's request for a new trial. Thus, this claim merits no relief.

 ¶ 14 Lastly, Appellant argues that upon resentencing, Judge Greenspan acted improperly by imposing a *more severe sentence* than the original sentence which Appellant received. Appellant is thus actually arguing that consecutive life sentences are a more severe sanction than (concurrent) death sentences, betraying at best an elevation of form over substance and at worst a remarkable misunderstanding of the nature of a death sentence. Relying upon *North Carolina v. Pearce,*[7] Appellant proffers that *any* consecutive sentence on remand where the original sentence was to run concurrently is in violation of the constitutional guarantee against multiple punishments for the same offense. (Appellant's Brief at 13–14). While Appellant's reliance on *Pearce* is completely misplaced, more importantly, Appellant has failed to preserve this issue for review.[8]

¶ 15 First, the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court, and a challenge to the imposition of consecutive sentences simply does not raise a substantial question. *Commonwealth v. Hoag,* 445 Pa.Super. 455, 665 A.2d 1212, 1214 (1995) (quoting *Commonwealth v. Graham,* 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995)). "[I]ssues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Mann,* 820 A.2d 788, 794 (Pa.Super.2003) (citations omitted), *appeal denied,* 574 Pa. 759, 831 A.2d 599 (2003).

¶ 16 Instantly, Appellant failed to raise any challenge to his sentence at the sentencing hearing, and he also failed to raise this claim in his post-sentence motions. Therefore, Appellant has waived his final issue on appeal. Based upon the foregoing reasons, we affirm Appellant's judgment of sentence.

¶ 17 Judgment of sentence affirmed.

---

7. 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce,* after accepting the defendant's guilty pleas to four separate charges of second-degree burglary, the trial court sentenced him to an aggregate prison term of ten (10) years. More than two years later, the defendant was retried upon three of the charges, convicted and sentenced to twenty-five (25) years without credit for time served and with no explanation of record for the harsher sentence. The Supreme Court held that the threefold increase in punishment af-

ter a new trial, without credit for time served and without the court's reasons affirmatively appearing of record, violated the due process clause. These are not the facts of the case *sub judice.*

8. We pause to note the ludicrous nature of Appellant's assertion that two sentences of life imprisonment imposed consecutively is a more severe sanction two concurrent sentences of death.