J-S38008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARCUS LLOYD | : | |
| | : | |
| Appellant | : | No. 3010 EDA 2017 |

Appeal from the PCRA Order August 11, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0501982-1998

BEFORE:   OTT, J., DUBOW, J., and COLINS[*], J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 16, 2019**

Marcus Lloyd appeals, *pro se*, from the order entered August 11, 2017, in the Philadelphia County Court of Common Pleas, dismissing as untimely his serial petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  Lloyd seeks relief from the judgment of sentence of two consecutive sentences of life imprisonment, imposed on August 20, 2003, following his jury conviction of two counts of murder in the first degree, and one count each of robbery and conspiracy.[2]  On appeal, he asserts the PCRA court erred in dismissing the petition as untimely because he has newly

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] 18 Pa.C.S.A. §§ 2502(a), 3701, and 903, respectively.

discovered evidence. For the reasons discussed below, we vacate the order of August 11, 2017, and remand for further proceedings consistent with this memorandum.

We take the underlying facts and procedural history in this matter from this Court's June 27, 2005 opinion on direct appeal.

[ ] Marcus Lloyd, appeals from a judgment of sentence entered in the Philadelphia County Court of Common Pleas after a jury found him guilty of two counts of murder in the first degree, one count each of robbery and criminal conspiracy, and sentenced him to death. As a result of his first appeal directly to the Pennsylvania Supreme Court challenging the imposition of his death sentences, [Lloyd] was resentenced to consecutive life sentences. . . .

The facts of this case were set forth by the trial court as follows:

[Lloyd], and three confederates, Herbert Blakeney, Gregory Miller, and Kenneth Miller, were arrested and charged with two counts of first degree murder, robbery, conspiracy, and related offenses, pertaining to the robbery and shooting deaths of Charles Love, Esquire, who had been co-defendant, Gregory Miller's attorney, and Mr. Brian Barry, who was an assistant/paralegal to attorney Charles Love. The criminal incident occurred on February 25, 1998.

[Blakeney][,] entered into a negotiated guilty plea agreement with the Commonwealth, whereby he pled guilty to two counts of first degree murder, and related charges, and received two concurrent sentences of life imprisonment. Blakeney testified for the Commonwealth at trial, and [ ] admitted to being the actual shooter of the two victims.

The evidence at trial established that one of the murder victims, Charles Love, Esquire, had represented co-defendant, Gregory Miller[,] in various matters, and had obtained monies for Gregory Miller[ ] as a result of civil claims. The entire sums recovered could not be distributed to Gregory Miller [ ] because

- 2 -

of outstanding Family Court "support" orders and liens. In claim [sic] against the City of Philadelphia, Mr. Love had recovered a sum of $15,000 for his client, Gregory Miller. A "Statement of Distribution"[ ] indicated that after various deductions, Gregory Miller was to receive the amount of $5,915.10. However, Gregory Miller had also owed child support arrearages, and had agreed that the sums recovered were to be applied to the reduction of the amount of the arrearages.

On February 25, 1998, [Lloyd] and Kenneth Miller visited [Blakeney] and told him that Gregory Miller wanted to speak to all of them about a "stick-up". The three of them then proceeded to Gregory Miller's home, where the group discussed Gregory Miller's plan to have them rob and murder Mr. Love [ ] and Mr. Brian Barry. Gregory Miller explained that he wanted the victims robbed and killed because he had not received the expected amount of funds from attorney Love.

Gregory Miller gave [Lloyd] a .38 caliber handgun and some telephone wire, and instructed [him] to conceal the weapon until the group was inside Mr. Love's law office. Gregory Miller directed that Brian Barry was to be tied up. He also told Blakeney to use the gun to force Mr. Love to write a check for $10,000.00. He told [Lloyd] to take the check to a bank to have it cashed, and he instructed Kenneth Miller to shoot both victims once [Lloyd] cashed the check. Gregory Miller told his cohorts to "leave no witnesses".

[Lloyd], Kenneth Miller, and [ ] Blakeney then went to Mr. Love's office. Gregory Miller did not go with them to the office. Once at the office, Blakeney confronted Mr. Love with the handgun and demanded that he write a check for $10,000.00. [Lloyd] took Mr. Brian Barry into a storage closet, laid him facedown on the floor, and "hog-tied" him. [Lloyd] then took the check to a nearby bank, in an attempt to cash it. [ ] Blakeney took $1,500.00 from Mr. Love's pocket, and he and Kenneth Miller took turns keeping watch at a

window, and holding Mr. Love at gunpoint, to ensure that he could answer the phone.

[Lloyd] was unable to have the check cashed at the bank[ ] because of inadequate identification. [Lloyd] returned to the law office, and said to Mr. Love: "You know you are a dead motherfucker now." Blakeney then gave the gun to Kenneth Miller while he (Blakeney) took Mr. Love into the storage closet and laid him on the floor next to Mr. Barry. Kenneth Miller gave the gun back to Blakeney and urged him to kill the victims, saying, "You are a bitch ass nigger, if you don't kill the motherfuckers". Blakeney subsequently then shot both victim's [sic] in the head. [Lloyd], Blakeney and Kenneth Miller then split the $1,500.00 taken from the robbery and went shopping. Blakeney subsequently returned the gun to Gregory Miller, but did not give him any money, telling him that they had been unable to cash the check, and omitting telling him of the $1,500.00 taken from Mr. Love.

(Trial Court Supplemental Opinion filed January 20, 2004, at 2-4) (internal citations omitted).

Blakeney pled guilty to two counts of murder and agreed to testify at [Lloyd's] trial in exchange for concurrent life sentences. The Honorable James F. Fitzgerald, III, presided over [Lloyd's] jury trial and the subsequent penalty phase, after which the jury returned verdicts of death for each of [Lloyd's] murder convictions. On December 20, 1999, the sentencing court formally imposed concurrent death penalty sentences for the murder convictions and imposed concurrent sentences of five (5) to twenty (20) years' imprisonment for the robbery conviction and twenty (20) to forty (40) years' imprisonment for the criminal conspiracy conviction.

[Lloyd's] counsel filed post-sentence motions on December 28, 1999, . . . Upon request, trial counsel was permitted to withdraw, and Richard E. Johnson, Esquire was appointed as replacement counsel. On August 23, 2000, Attorney Johnson filed amended post-sentence motions, the trial court heard oral argument thereon, and the court denied [Lloyd's] motions for a new trial and an arrest of judgment.

- 4 -

[Lloyd] appealed his judgment of sentence to the Pennsylvania Supreme Court, and on May 29, 2002, the Court granted his petition to remand for resentencing and remanded for a new sentencing hearing. Thereafter, Attorney Johnson was permitted to withdraw and present counsel was appointed. On August 20, 2003, the Honorable Jane Cutler Greenspan conducted a sentencing hearing, following which she imposed consecutive terms of life imprisonment for the two murder convictions. The sentences for the robbery and criminal conspiracy convictions remained the same and were ordered to run concurrently with the life sentences. This timely appeal followed. . . .

***Commonwealth v. Lloyd***, 878 A.2d 867, 868-870 (Pa. Super. 2005) (footnotes omitted).

On June 27, 2005, this Court affirmed the judgment of sentence. ***See id.*** at 868. On November 10, 2005, the Pennsylvania Supreme Court denied leave to appeal. ***Commonwealth v. Lloyd***, 887 A.2d 1240 (Pa. 2005). Lloyd did not file a petition for a writ of *certiorari* with the United States Supreme Court.

On November 30, 2005, Lloyd filed a timely first PCRA petition, which the PCRA court ultimately denied on February 6, 2008. This Court affirmed the denial of PCRA relief on March 20, 2009. ***See Commonwealth v. Lloyd***, 972 A.2d 556 (Pa. Super. 2009). The Pennsylvania Supreme Court denied leave to appeal on September 22, 2009. ***Commonwealth v. Lloyd***, 980 A.2d 606 (Pa. 2009).

On April 20, 2012, Lloyd filed the instant PCRA petition. He subsequently filed multiple amended PCRA petitions. On August 3, 2017, the PCRA court issued notice of its intent to dismiss the petition pursuant to

Pennsylvania Rule of Criminal Procedure 907(1). Lloyd did not file a response. On August 11, 2017, the PCRA court dismissed the petition as untimely filed. Lloyd filed a timely notice of appeal on September 8, 2017. On September 12, 2017, the PCRA court directed Lloyd to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Lloyd filed a timely Rule 1925(b) statement on September 29, 2017. On February 5, 2019, the PCRA court filed an opinion.[3]

Preliminarily, we note Lloyd filed an application for relief in this Court asking we direct the PCRA court to forward to us a newly filed PCRA petition containing additional claims of after discovered evidence. As the PCRA court does not have jurisdiction to consider this newly-filed PCRA petition pursuant to the Pennsylvania Supreme Court's decision in **Commonwealth v. Lark**, 746 A.2d 585, 588 (Pa. 2000),[4] we will not ask it to forward the document to us. Accordingly, we deny Lloyd's application for relief.

_____

[3] It is not apparent from the record why this PCRA petition languished in the PCRA court for over five years without the court taking any action on the matter. We note, because of this, Lloyd filed multiple amendments and supplements to the petition. We also note the PCRA court has not offered any explanation for the over one year delay in filing a Rule 1925(a) opinion, a delay, which has complicated the disposition of this matter.

[4] The **Lark** Court held "when an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review." **Lark**, **supra** at 588.

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Mitchell*, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal punctuation and citation omitted). Here, the PCRA court determined, *inter alia*, that Lloyd's petition was untimely. We agree. A petitioner must file a PCRA petition within one year of the date the underlying judgment becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1).

> The PCRA timeliness requirement, however, is mandatory and jurisdictional in nature. *Commonwealth v. Taylor*, 933 A.2d 1035, 1038 (Pa. Super.2007), *appeal denied*, 597 Pa. 715, 951 A.2d 1163 (2008) (citing *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 203 (2000)). The court cannot ignore a petition's untimeliness and reach the merits of the petition. *Id.*

*Commonwealth v. Taylor*, 67 A.3d 1245, 1248 (Pa. 2013), *cert. denied*, 572 U.S. 1151 (2014).

Lloyd's judgment of sentence was final on February 8, 2006, 90 days after the Pennsylvania Supreme Court denied leave to appeal and the time for filing a petition for writ of *certiorari* before the United States Supreme Court expired. *See* U.S.Sup.Ct. Rule 13; 42 Pa.C.S.A. § 9545(b)(3). Therefore, he had until February 8, 2007, to file a timely PCRA petition. His second petition, filed April 20, 2012, is patently untimely.

Nevertheless, we may still consider an untimely PCRA petition if one of the following three exceptions applies:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of

the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i-iii).

Here, Lloyd attempts to invoke the unknown facts exception set forth in Subsection 9545(b)(1)(ii). Until recently, a petitioner invoking an exception had to file his petition within 60 days of the date he or she could have presented the claim.[5]

This Court has previously explained the interplay between the newly discovered facts exception to the timeliness requirements and a substantive collateral claim of after-discovered evidence as follows:

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence.

---

[5] Effective December 24, 2018, Act 146 of 2018 amended 42 Pa.C.S.A. § 9545(b)(2), and now provides that a PCRA petitioner invoking a timeliness exception must file the petition within one year of the date the claim could have been presented, for all claims arising after December 24, 2017. *See* Act 2018, Oct. 24, P.L. 894, No. 146, § 2 and § 3.

This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176–177 (Pa. Super. 2015) (some citations and quotation marks omitted, emphases in original), *appeal denied*, 125 A.3d 1197 (Pa. 2015). Accordingly, before we may consider whether Lloyd's substantive claim of after-discovered evidence merits relief, we must

first determine whether he has established "there were facts unknown to him and that he exercised due diligence in discovering those facts." *Id.* at 176.

Lloyd contends the Commonwealth violated the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to turn over sealed records and sealed guilty plea notes of testimony from the Commonwealth's main witness, Blakeney. Lloyd's Brief, at 7-13. Lloyd states these would have shown, at the time of Lloyd's trial, Blakeney was mentally ill and taking psychotropic medication. Lloyd's Brief, at 7-13. Lloyd further maintains this information constitutes after-discovered evidence. *Id.* Lloyd contends he was unaware of this information at the time of trial in 1998. *Id.* He avers he was unable to discover the information at the time Blakeney's guilty plea hearing testimony was unsealed in November 2006. *Id.* Lastly, he states he was unaware of the information until informed about it by one of his co-defendant's nephews, at which point he acted to obtain the information and filed the PCRA petition within sixty days of obtaining it.

The PCRA court disagreed, holding the medical records documenting Blakeney's illness dated back to 1996, two years before the murders, and Lloyd had not shown he could not have discovered them at the time of trial. PCRA Court Opinion, 2/05/2019, at 4-5. The court further found the Pennsylvania Supreme Court's decision in *Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017), did not apply in this case because, in November 2006,

when the Commonwealth unsealed the Blakeney guilty plea transcript, counsel represented Lloyd.[6]  *Id.* at 5.

In **Burton**, our Supreme Court held the public records rule does not apply to petitions filed by *pro se* prisoners.  **See Burton**, **supra** at 620.  The public records rule provides that to qualify as a newly discovered fact, "the information may not be part of the public record."  **Commonwealth v. Edmiston**, 65 A.3d 339, 352 (Pa. 2013) (citation omitted).  Moreover, our Supreme Court clarified that whether a defendant acted with due diligence is a separate inquiry from whether a fact was unknown. **Commonwealth v. Staton**, 184 A.3d 949, 957 (Pa. 2018).   A petitioner has not acted with due diligence if he was represented by counsel, the documents were public for many years, and this time period overlapped with the time period the petitioner was represented by counsel.  **See id.**

In the instant matter, the PCRA court appears to have improperly conflated the inquiry as to whether the fact was unknown with the due diligence inquiry.  **See** PCRA Ct. Op., at 5-6.  Moreover, our review of the

---

[6] The PCRA Court also found the claim meritless because, it averred, since the trial court found Blakeney competent to plead guilty, Lloyd would be unable to prove that Blakeney's testimony was unreliable.  **Id.** at 5.  However, this analysis is both premature and questionable since it does not address the question that Lloyd clearly raised in his PCRA petition of whether the Commonwealth withheld **Brady** material.  Moreover, the issue of whether Blakeney was competent to enter a guilty plea is irrelevant to the issue of his state of mind at the time of the murders and not dispositive of a claim that the medications he took at the time of the trial may have affected his memory of the events.

record demonstrates that the record is too underdeveloped to support the PCRA court's determinations.

Initially, we are unpersuaded by the PCRA court's finding that, because Blakeney's mental health records date back to 1996, Lloyd knew or should have known of his mental illness. Mental health records are not public records. Lloyd claims that he was unaware that Blakeney had mental health issues. The fact they committed a crime together does not prove that Lloyd had any reason to know about Blakeney's mental health problems. Moreover, the Commonwealth does not dispute it sealed the transcript of the guilty plea hearing, which would have alerted trial counsel to Blakeney's mental illness. Thus, absent evidence that would disprove Lloyd's claim he did not know Blakeney was mentally ill; the record does not support the PCRA court's finding that Lloyd should have known about Blakeney's mental illness prior to or during trial.

As the PCRA court notes, PCRA counsel represented Lloyd when the Commonwealth unsealed the Blakeney guilty plea transcript on November 29, 2006. PCRA Ct. Op., at 5. Counsel's representation continued until February 6, 2008.[7] Thus, as the PCRA court correctly found, **Burton** was inapplicable,

---

[7] Counsel moved to withdraw on December 7, 2007; the PCRA court granted the motion on February 6, 2008.

at least for that time period.[8] *See Staton*, *supra* at 975; PCRA Ct. Op. at 5. However, this does not end our inquiry. Again, the record in this matter is undeveloped. It is simply not clear, absent prior knowledge of Blakeney's mental illness, PCRA counsel would have had any reason to seek out the newly unsealed guilty plea hearing transcript. Thus, we cannot say, based on the current record, the PCRA court was correct in holding the information contained in the transcript was not unknown and, therefore, did not constitute an unknown fact. Moreover, the record is simply undeveloped with respect to whether or not Lloyd acted with due diligence in uncovering the information. Thus, we find the PCRA court erred in dismissing Lloyd's PCRA petition.

Instantly, we are not holding Lloyd met the threshold inquiry of establishing "the facts upon which the claim was predicated were unknown and could not have been ascertained by the exercise of due diligence." *Brown*, *supra* at 1076. Instead, we hold there is a genuine issue of material fact as to whether the facts were unknown and whether Lloyd acted with due diligence and, therefore, Lloyd is entitled to an evidentiary hearing with respect to these issues. If, after a hearing, the PCRA court determines the

---

[8] In *Staton*, the information at issue had been part of the public record for many years and counsel had almost continuously represented the defendant during that period. *See Staton*, *supra* at 956-957. That is not the case in the instant matter. While counsel represented Lloyd when the information became part of the public record, he only represented him for approximately one year of that period before seeking to withdraw and Lloyd has represented himself since February 2008. Under these circumstances, *Staton* is distinguishable.

facts were unknown and Lloyd did act with due diligence, then Lloyd has pled and proven the applicability of the newly discovered fact exception to the PCRA's timeliness requirement. In that case, the PCRA court possesses the jurisdiction to consider the merits of Lloyd's *Brady* and newly discovered fact claims.

During the pendency of the instant appeal, Lloyd filed an additional PCRA petition with the court below on August 31, 2019, as well as an application with this Court, on September 5, 2019, to supplement the record with the August 31st petition. Given the inordinate delays in this matter, as well as the substance of the petition, upon remand, the scope of the remand may include consideration of the PCRA petition filed August 31, 2019. We deny the application to supplement the record, without prejudice to seek relief from the PCRA court upon remand.

Accordingly, for the reasons discussed above, we find the PCRA court erred in dismissing Lloyd's PCRA petition. We remand for an evidentiary hearing and direct the PCRA court to appoint counsel to represent Lloyd's interests in this hearing, as expeditiously as possible. *See* Pa.R.A.P. 904.

Order vacated. Case remanded. Jurisdiction relinquished. Application for relief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/19