J-S09009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
    :                   PENNSYLVANIA
    :
                   v.                   :
    :
    :
    :
RONALD HARVEY FOSTER     :
    :
           Appellant     :   No. 505 WDA 2018

Appeal from the Judgment of Sentence October 17, 2017
In the Court of Common Pleas of Beaver County
Criminal Division at No(s):  CP-04-CR-0002368-2016

BEFORE:   PANELLA, P.J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, P.J.:        **FILED SEPTEMBER 9, 2019**

Ronald Harvey Foster appeals from the judgment of sentence imposed after a jury verdict found Appellant guilty of two counts of third degree murder, **see** 18 Pa.C.S.A. § 2502(b), one count of conspiracy to commit robbery, **see** 18 Pa.C.S.A. § 903(a)(1), three counts of robbery, **see** 18 Pa.C.S.A. § 3701(a)(1)(i) and (ii), and one count of criminal use of a communication facility, **see** 18 Pa.C.S.A. § 7512(a).  After careful review, we affirm.

This case arises from a drug deal gone bad.  Many of the facts are undisputed.  On several occasions, Appellant sought to purchase marijuana from Dane Mathesius, one of the two murder victims.  When Mathesius appeared at an abandoned building to consummate the transaction, Appellant,

_____

* Retired Senior Judge assigned to the Superior Court.

Lawrence Reddick, Deontae Jones, and Rasheid Hicks were waiting. Present with Mathesius was sixteen-year-old William Booher and thirteen-year-old N.R.

Mathesius stopped his car, and Reddick climbed into the rear passenger seat. Reddick brandished a firearm and directed Mathesius to pull over. Reddick then robbed Mathesius, Booher, and N.R. At the conclusion of the robbery, Reddick fatally shot both Mathesius and Booher.

The primary issue at trial was Appellant's awareness of Reddick's intent to rob Mathesius. Appellant admitted he set up the drug deal. He also admitted he agreed to have Reddick accomplish the transaction, as Appellant feared that Booher intended to rob Appellant.

In contrast, the Commonwealth presented testimony that Appellant planned the robbery with Reddick. Hicks testified that he heard Appellant plan the robbery with Reddick the night before it occurred. Xavier Fisher also testified to Appellant's involvement in planning the robbery the night before. Jones testified that Appellant had informed him of his intent to rob Mathesius a week prior to the robbery.

At sentencing, Appellant was sentenced to an aggregate period of thirty-four to seventy years. While Appellant's initial counsel did not file a post-sentence motion or notice of appeal, on November 14, 2017, the trial court granted Appellant permission to file a post-sentence motion *nunc pro tunc* within thirty days of its order. After the trial court allowed for another

extension, Appellant ultimately filed his supplemental omnibus post-sentence motion on February 2, 2018, raising eighteen discrete issues.

On March 15, 2018, the trial court denied Appellant's application for relief as to all of his claims with the exception of one relating to restitution. On April 10, 2018, Appellant filed a timely notice of appeal to this Court. One day later, Appellant was directed by the trial court to file a concise statement of matters complained of on appeal, which he timely filed.

In his brief before this Court, Appellant raises seven issues on appeal:

1) Appellant challenges the sufficiency of the evidence used to support the jury's finding of two third-degree murder verdicts, three robbery verdicts, and its conspiracy to commit robbery verdict.

2) Appellant challenges the weight of the evidence used to support the jury's finding of two third-degree murder verdicts, three robbery verdicts, and its conspiracy to commit robbery verdict.

3) Appellant contends the trial court erred in permitting the Commonwealth to display for the jury a specific text message that demonstrated an intent to commit a crime for which he was not charged.

4) Appellant suggests the trial court erred when it continually forced him to confirm or deny the testimony of Commonwealth witnesses, where he was asked to comment on the accuracy and veracity of those witnesses.

5) It was error for the jury to have access to cellphone data reports containing text messages between Appellant and Mathesius, as they amounted to a confession.

6) Appellant challenges the discretionary aspects of his sentence, contending that his sentence is violative of both the United States Constitution as well as Pennsylvania's Constitution.

7) Appellant maintains that the trial court abused its sentencing power when it failed to order the total joint costs and restitution be paid jointly and severally with co-defendants, as well as when it failed to delay the collection of the costs and restitution until Appellant's release from his prison sentence.

*See* Appellant's Brief, at 15-16.

First, Appellant asserts that the evidence was insufficient to support the third-degree murder verdicts, the robbery verdicts, and the conspiracy to commit robbery verdict.

> When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden by proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Dix*, 207 A.3d 383 (Pa. Super. 2019) (citations and quotation marks omitted). In addition, "the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Tejada*, 107 A.3d 788, 793 (Pa. Super. 2015) (citation omitted).

In this case, Appellant's culpability was based on conspiratorial and accomplice liability. While Appellant concedes that Reddick did, in fact, commit three acts of robbery and two acts of murder, Appellant contends that his apparent renunciation of the events on that date absolves him of the conspiratorial and accomplice-based crimes for which he was found guilty.

Appellant was convicted of and sentenced to one count of conspiracy to commit robbery. "A person is a conspirator if the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa. Super. 2016). "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004). Additionally, we have held that "in order for a withdrawal from a conspiracy to be legally sufficient, it must occur before the commission of the crime becomes so imminent that avoidance is out of the question." *Commonwealth v. Carlitz*, 466 A.2d 696, 698 (Pa. Super. 1983) (quotation marks and citation omitted).

Appellant concedes that he conspired with Reddick to purchase marijuana from Mathesius. He further concedes that the testimony of Jones and Hicks supports a finding that he initially was involved in a conspiracy to rob Mathesius. However, he argues that the evidence of his abandonment of the conspiracy was "incontrovertible." Appellant's Brief, at 19. He further argues the evidence was incapable of supporting any inference that he conspired to commit any crimes against N.R., as there was no evidence he was aware that N.R. would be present.

As outlined more fully below, the testimony presented at trial, primarily through Jones's account, demonstrated that, at a minimum, Appellant and Reddick entered into an agreement to commit a robbery against Mathesius. *See* N.T., 8/18/17, at 220. The evidence was sufficient to additionally demonstrate that Appellant had the requisite and shared criminal intent to effectuate a robbery and utilized his cell phone to bring Mathesius into the area under the guise of a purported drug transaction.

Appellant was the only one amongst his cohorts who knew any of the individuals that would arrive in the vehicle. While Reddick possessed Appellant's cell phone at some point, Appellant directed most of the activity in bringing Mathesius, Booher, and N.R. to the area that was agreed upon by Reddick and Appellant. It is true that the trajectory of the conspiracy altered after its inception, where the target of the robbery changed from Mathesius, to both Mathesius and Booher, to what actually occurred: the robbery of Mathesius, Booher, and N.R. In addition, while it was Reddick who, upon Appellant learning of Booher's presence, approached the victims, it does not alter the actions already taken by Appellant to lure the victims to the ambush.

Not only was Appellant a primary causal point for the commission of the robbery because he was the person responsible for bringing the victims to the specific area, Appellant was, too, intricately involved in the actual planning of the robbery, which occurred primarily between Appellant and Reddick, but involved others, too. *See, e.g., id.*, at 210-22.

Contrary to Appellant's assertion, there is no basis to conclude that Appellant effectively repudiated his involvement in the conspiracy. While there was evidence that Appellant oscillated on whether the robbery should occur on the basis that he knew Booher would be present in the vehicle, "for an abandonment to be legally sufficient, it must occur before the commission of the crime becomes so imminent that avoidance is out of the question." *Commonwealth v. Roux*, 350 A.2d 867, 871 (Pa. 1971). The evidence of record is sufficient to establish that Appellant used his phone to bring Mathesius to the area while already having agreed to rob him, gave his phone to Reddick after conversing with Mathesius over the course of several days, stayed geographically close by while Reddick acted, and then reconvened with Reddick after Reddick had murdered two individuals and robbed three. Accordingly, the evidence was sufficient to find Appellant guilty of a conspiracy to commit a robbery.

Appellant raises a similar challenge to his convictions pursuant to accomplice liability. "The criminal intent necessary to establish accomplice liability is identical to the criminal intent necessary to establish conspiracy." *Commonwealth v. Hennigan*, 753 A.2d 245, 254 (Pa. Super. 2000). Our Supreme Court has further indicated that "[a]n actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission

of the offense." ***Commonwealth v. Cox***, 686 A.2d 1279, 1286 (Pa. 1996). Furthermore, "[t]he least degree of concert of collusion is sufficient to sustain a finding of responsibility as an accomplice." ***Commonwealth v. Coccioletti***, 425 A.2d 387, 390 (Pa. 1981).

Appellant largely restates his argument that he effectively repudiated his involvement in any conspiracy. Appellant contends that Reddick acted unilaterally on September 29, and even if Appellant knew Reddick were to commit a crime, that is not enough to designate him as an accomplice. ***See Commonwealth v. Rega***, 933 A.2d 997, 1015 (Pa. 2007) (establishing that "a person cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene"). In addition, Appellant argues that merely introducing the buyer and seller to each other does not inherently make one an accomplice. ***See Commonwealth v. Flowers***, 387 A.2d 1268, 1270 (Pa. 1978) (indicating that "a test of partnership or concert of action to determine guilt as an accessory" is the proper analysis for accomplice liability rather than a "but-for" test).

Appellant also suggests that he cannot be an accomplice to the robbery of N.R. because the uncontroverted evidence at trial indicated that those outside of the vehicle were not aware of N.R.'s presence. Finally, Appellant states that the crime of murder was not in progress and even less imminent when he allegedly renounced his intent to participate in Reddick's scheme.

Thus, the question remains whether it was sufficient for the trier of fact to find that each element of every crime for which Appellant was convicted was established beyond a reasonable doubt. "An accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either planning or committing the criminal offense." ***Commonwealth v. Potts***, 566 A.2d 287, 291 (Pa. Super. 1989) (citation and quotation marks omitted). However, an "offense-specific analysis of intent and conduct is required" to ascertain whether Appellant had the requisite intent to promote or facilitate the offense and thereafter solicited or aided, agreed to, or attempted to aid the other person in planning or committing the offense. ***Commonwealth v. Knox***, 105 A.3d 1194, 1196-97 (Pa. 2014) (rejecting the notion that "an accomplice [is] liable for all of natural and probable consequences of the principal's actions in the commission of a target offense"); ***see also*** 18 Pa.C.S.A. § 306(c).

Here, there was ample evidence tending to demonstrate Appellant's intentional involvement, and therefore culpability, in the planning of the underlying robbery. First, Appellant's actions, via text messages sent to Mathesius over the course of several days, set into motion the chain of events that led to the robberies and murders. No one else affiliated with Appellant knew any of the people who arrived by vehicle to participate in the drug deal.

*See* N.T., 8/28/17, at 156-57 (Appellant stating that he was the only one who knew Mathesius and Booher).

Reddick's use of Appellant's phone does not change the fact that Appellant provided the framework for Mathesius, Booher, and N.R. to travel to Aliquippa under the pretense of a drug deal. In addition, these series of text messages provided the impetus for Reddick, who had no prior knowledge of any of these individuals, to ultimately enter Mathesius's vehicle.

Second, beyond merely being the causal point for the events of September 29, testimony established that Appellant had the requisite intent to commit a robbery. Hicks, Jones, and Fisher all testified, to varying degrees, to Appellant's desire to, at least conceptually, rob Mathesius. While it is true that Fisher heard Appellant state "[w]e can't do this with [Booher] in the car," Fisher also indicated that he heard Appellant use the word "lick," which was known to Fisher to mean a robbery. N.T., 8/18/17, at 76-77.

It is also noteworthy that Appellant never left the scene upon expressing his concerns with Booher's presence. Hicks corroborated Fisher's account of hearing Appellant use the word "lick" and knew it to mean a robbery. *See id.*, 8/22/17, at 116. In addition, Hicks stated that he had heard Appellant identify that he did not have a weapon, but that Reddick would give Appellant his. *See id.* Hicks also testified that Appellant suggested Jones could use Appellant's mask. *See id.*, at 117.

Most notable was the testimony of Jones. At trial, Jones testified that Appellant "told [him] he had a lick" a week prior to when the robbery happened. *See id.*, 8/18/17, at 210-11. Jones conveyed that it was Appellant's cousin who told Appellant that he could rob Mathesius. *See id.*, at 212. Jones recalled that Appellant told him it was going to be someone from Beaver that would come to Aliquippa. *See id.*, at 213. Jones further stated that "[t]he plan was for [Appellant and Reddick] to put the money together and act like they were going to buy it and then rob them." *Id.*, at 220. Moreover, Appellant wanted to use Reddick's gun and sought to use Jones as a diversion. *See id.*, at 220-22.

Jones admitted that the surveillance video showed Appellant, Reddick, and himself at Reddick's house, which is when Reddick and Appellant obtained Reddick's gun. *See id.*, 8/21/17, at 10-11, 20-21. When Appellant, Jones, and Reddick reconvened shortly thereafter, Appellant and Reddick had a disagreement over where they wanted the robbery to occur. *See id.*, at 15, 17-18. While Appellant stated his reservations about going through with the robbery in light of Booher's presence, ultimately Appellant and Reddick decided upon a general location for the robbery. *See id.*, at 17-19.

While waiting for Mathesius's vehicle to arrive at the scene of the crime, Appellant gave Reddick his phone to continue relaying the location of the deal to the victims. *See id.*, at 31-32. Reddick waited for the vehicle on the side street, while Jones and Appellant waited in an alley, and Hicks waited in front

of a house and under an alcove. ***See id.***, at 35-36. After Reddick got into the vehicle, Appellant, Jones, and Hicks heard gunshots. ***See id.***, at 42. Then, Reddick, Appellant, Hicks, and Jones all had a rendezvous after the robberies and shootings before they went their separate ways. ***See id.***, at 43-44.

Clearly, there was sufficient evidence to support a finding that Appellant acted as an accomplice to Reddick's actions. Through his interactions with others in addition to cell phone records, the testimonial and physical evidence was sufficient to establish that Appellant had the intent to promote or facilitate the robbery. Moreover, the record contains evidence both that Appellant solicited others, including Reddick, to aid in the commission of the robbery and that Appellant subsequently aided Reddick in the planning and commission of the robbery. Accordingly, when viewed in the light most favorable to the Commonwealth, there is sufficient evidence to conclude that Appellant was an accomplice to Reddick's robberies.

Undoubtedly, even if we were to conclude, as Appellant suggests, that Appellant terminated his complicity prior to the robberies and murder, neither of the relevant exceptions would apply. Appellant did not "wholly deprive[] [the offenses] of effectiveness" nor did he "give[] timely warning to law enforcement authorities or otherwise make[] [a] proper effort to prevent the commission of the offense." 18 Pa.C.S.A. § 306(f)(3)(i-ii); ***see also Commonwealth v. Howard***, 517 A.2d 192, 197 (Pa. Super. 1986) (establishing that an accomplice's duty under the law is "not only [to]

- 12 -

terminate his complicity, but to otherwise take steps to prevent the commission of the crime").

Appellant further contends that the evidence was insufficient to convict Appellant of two counts of murder of the third degree. In Pennsylvania, a third-degree murder is defined as "[a]ll other kinds of murder" that are not an intentional killing nor committed "while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(a)-(c).

> Third degree murder requires malice, which may include an intent to cause serious bodily injury that results in death, but third degree murder does not require such intent because malice can also be established by a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty, which indicates an unjustified disregard for the likelihood of death or great bodily harm, and an extreme indifference to the value of human life.

**Commonwealth v. Williams**, 980 A.2d 510, 524 (Pa. 2009) (citation omitted). In the domain of accomplice liability, "a conviction for murder of the third degree is supportable under complicity theory where the Commonwealth proves the accomplice acted with the culpable mental state required of a principal actor, namely, malice." **Commonwealth v. Roebuck**, 32 A.3d 613, 624 (Pa. 2011). Moreover, "accomplice liability does not require the defendant to have the conscious objective to cause a particular result when such an outcome is an element of the offense." **Id.**, at 623.

While in **Knox**, our Supreme Court rejected the "natural and probable consequence" theory to accomplice liability and concluded that accomplice liability is offense-specific, 105 A.3d 1194, 1196-97 (Pa. 2014), there is ample

- 13 -

evidence of record indicating that Appellant knew and in fact encouraged the use of a deadly weapon, either to use himself or for use by Reddick, which unquestionably carries a significantly greater risk of harm in comparison to an unarmed robbery. *See Commonwealth v. Roebuck*, 32 A.3d at 615 n. 4 (affirming Superior Court's conclusion that "[a]ppellant demonstrated the requisite malice by participating in a scheme designed, at a minimum, to stage an armed confrontation with the victim"). Therefore, the evidence was sufficient to support a finding of malice. As a result, the evidence was sufficient for the jury to find Appellant guilty as an accomplice to third-degree murder.

Next, Appellant challenges the weight of the evidence supporting his convictions. A weight of the evidence challenge "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (citation omitted). Our standard of review for a claim that the verdict was against the weight of the evidence is as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion*, *not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted) (emphasis in original). "Discretion is abused where the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000).

Appellant advances the argument that Appellant's murder, robbery, and conspiracy verdicts "shock[] the conscience" because Appellant "took all action necessary to (A) announce his intention to abandon any further continuation of the conspiracy to rob anyone and (B) renounce his intention to continue aiding Reddick in the robbery of anyone and terminated his

involvement and aid in it as soon as he learned Booher would be present."
Appellant's Brief, at 26. Appellant claims that when he gave his cell phone to
Reddick, it eliminated his "culpability as to all robbery and murder counts,"
which occurred "prior to any meeting between Reddick and the persons in the
car." *Id.*

> The trial court disagreed:
>
> The Commonwealth presented twenty different witnesses, some
> of whom testified multiple times, and introduced numerous items
> of documentary and physical evidence. The Commonwealth
> presented the testimony of N.R., who was present during the
> shooting, and the testimony of Jones, Hicks, and Fisher, who were
> present during, and heard discussions related to, the planning of
> the robbery. The Commonwealth further presented evidence of
> the surveillance footage …, showing the meeting of the co-
> conspirators, and evidence of the extraction of Mathesius'
> cellphone, showing text messages sent back and forth between
> Mathesius and [Appellant].

Trial Court Opinion, 5/23/18, at 32.

In light of all the evidence that was presented, we cannot conclude that
the judgment demonstrated by the trial court was manifestly unreasonable or
that a misapplication of the law has occurred. Accordingly, the trial court did
not abuse its discretion in determining that any of the verdicts were against
the weight of the evidence.

In his third issue, Appellant avers the trial court erred in admitting a
text message he sent to Mathesius. This text message outlined a "future plan
to sell the marijuana once he bought it from Mathesius, a non-charged crime

or bad act[.]" Appellant's Brief, at 27. Appellant claims this text message painted him as a drug dealer and unfairly prejudiced him.

When considering the admission of evidence, our standard of review is very narrow. Our review of a trial court's evidentiary ruling is limited to determining whether the trial court abused its discretion. **See Commonwealth v. Dengler**, 890 A.2d 372, 379 (Pa. 2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id**. (citation omitted). Finally, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted).

The trial court admitted the text message as evidence of Appellant's motive and a *res gestae* (course of conduct) statement. Further, the court indicated that it would provide a cautionary instruction advising the jury to consider the message only for the motive of Appellant to commit the charged crimes.

Delivery of a controlled substance is against the law in Pennsylvania. **See** 35 P.S. § 780-113(a)(30). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion he person acted in accordance with the character." Pa.R.E.

- 17 -

404(b)(1). However, "evidence may be admissible for another purpose, such as motive" or "intent." *Id.*, at 404(b)(2). But such evidence in a criminal case is "admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

Appellant asserts that "[t]he Commonwealth ha[d] no need to introduce the additional reference to future intent to sell the purchased drugs to others." Appellant's Brief, at 29. Appellant believes that his plans for the marijuana had no bearing on his motive to commit the robbery. He also argues that his plans could not possibly be construed as a *res gestae* statement, as they were wholly irrelevant to anything occurring on the date the text was sent. *See id.* As such, he contends the probative value of the text message was outweighed by the unfair prejudice incurred by Appellant at trial.

Moreover, Appellant contends the Commonwealth violated Pa.R.E. 404(b)(3) when it did not provide advance notice of the fact that it intended to use the text message at trial. Finally, Appellant claims the trial court's jury instruction was "woefully inadequate" as it did not "mention the objectionable portion of the text" nor militate against a finding that Appellant is a bad person as a result of this activity. Appellant's Brief, at 30-31.

As such, Appellant's three arguments as to the admissibility of this text message can be distilled down to: 1) lack of notice provided by the Commonwealth; 2) the trial court's inadequate limiting instruction; and 3) the relevancy of and prejudice suffered from the message itself. All three

concerns deal with the whether the trial court made an erroneous evidentiary ruling.

As set forth in our standard of review, Appellant must demonstrate that he suffered prejudice from at least one of these alleged errors. We conclude he cannot do this. This text message was one of many inculpating Appellant in the plan to rob Mathesius. Further, he cannot explain how this evidence besmirched his character more than the evidence that he planned an armed robbery that ultimately resulted in two deaths. Accordingly, even assuming that the Commonwealth should have provided the notice that Appellant sought or that the trial court's limiting instruction suffered from some sort of deficiency, the trial court's admission of this one specific text message in a string of hundreds of other text messages constitutes harmless error.

Appellant's fourth issue contests the appropriateness of the trial court allowing the Appellant to be repeatedly asked whether individual Commonwealth witnesses lied during their testimonies. *See* Appellant's Brief, at 31-32. Appellant contends that asking Appellant to confirm or deny other testimony invaded the province of the jury, as it is within its exclusive purview to make credibility determinations. *See id.*, at 33.

While we have held that "were they lying" questions are generally prohibited in Pennsylvania, we have also held that asking such questions are held to a harmless error standard. *See Commonwealth v. Yockey*, 158 A.3d 1246, 1256 (Pa. Super. 2017). Appellant claims that he has been

prejudiced through the trial court allowing this type of questioning, other than merely making bald assertions, he has not cited to any specific instance in the record that could lead to such a finding. Even through our independent review of the record, we were only able to find one instance that featured an objection to an alleged "were they lying" question. *See* N.T., 8/29/17, at 59. The trial court resolved this objection by directing the Commonwealth to rephrase that specific question, and if the Commonwealth thereafter asked about the truth of other people's assertions, the trial court would "sustain the objection." *Id.*, at 60. Therefore, because the trial court did not adversely rule on Appellant's objection nor did he place any further contemporaneous objection on the record, Appellant's issue is waived. *See Commonwealth v. Leaner*, 202 A.3d 749, 771 (Pa. Super. 2019) (finding waiver of issue where appellant failed to object at trial); *see also Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 314 (Pa. Super. 2010) (declining to address an issue where trial ruling benefitted appellant) . Waiver notwithstanding, we are not convinced that any of the Commonwealth's questions led to anything materially prejudicial to Appellant's defense.

Next, Appellant asserts the jury should not have been allowed to take the cell phone records containing text messages between Appellant and Mathesius into the deliberation room. Appellant frames the text messages as a "recorded admission[] of his involvement in setting up an illegal drug sale." Appellant's Brief, at 35. Appellant cites Pa.R.Crim.P. 646(C)(2) in support of

his argument that during deliberations, "the jury shall not be permitted to have a copy of any written or otherwise recorded confession by the defendant." Appellant's Brief, at 36. Appellant's concern stems from the "prejudice that the physical presence of the recorded confession in the jury room would lead to overemphasis of that document by the jury at the expense of evidence presented only upon the witness stand." *Id*. This argument is subject to a harmless error analysis. *See Commonwealth v. Strong*, 836 A.2d 884, 888 (Pa. 2003).

Arguably, this issue is waived because Appellant failed to timely object to the text messages going out to the jury. *See Leaner*, supra. However, even addressing the issue on its merits, a confession is "an admission consisting of a direct assertion, by the accused in a criminal case, of the main fact charged against him or of some fact essential to the charge." *Commonwealth v. Maloney*, 73 A.2d 707, 711 (Pa. 1950) (citation and quotation marks omitted). Here, Appellant does not demonstrate how any of the text messages at issue constituted an admission of any element relevant to the charges for which he was being tried. In fact, a thorough reading of the messages leads us to conclude that none of them could possibly be construed as admitting material facts germane to the robbery or any of the other charges. Accordingly, as the text messages were not a "recorded confession" within the meaning of Pa.R.Crim.P. 646(C)(2), this issue, even if preserved, fails.

In Appellant's sixth issue, he challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Manivannan**, 186 A.3d 472, 489 (Pa. Super. 2018) (some citations omitted; formatting altered).

Appellant filed a timely notice of appeal, properly preserved his issue by way of post-sentence motion, and included a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence in a separate section of his brief to this Court pursuant to Pa.R.A.P. 2119(f). Therefore, we must evaluate whether the question raised by Appellant is a substantial question warranting our discretionary review. "A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the [Sentencing] Code or is contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Ventura**, 975 A.2d 1128, 1133 (Pa. Super. 2009).

In his Rule 2119(f) statement, Appellant argues that this case presents a substantial question because "the minimum sentence imposed was excessive due to the [t]rial [c]ourt relying on impermissible factors, mis-characterizing permissible factors, and ignoring appropriate permissible factors under the Sentencing Guidelines." Appellant's Brief, at 39. Appellant declares that the trial court "purported to sentence within the sentencing guidelines but applied the guidelines erroneously." Appellant's Brief, at 39.

For example, Appellant unambiguously asserts, *inter alia*, that "no aggravating factors existed," ***id.***, but Appellant was still sentenced at the top of the aggravated range for some offenses. Clearly, these averments, in the aggregate, raise substantial questions that the sentence imposed was inconsistent with specific provisions of the Sentencing Code or violated the fundamental norms of the sentencing process. ***See Commonwealth v. Riggs***, 63 A.3d 780 (Pa. Super. 2012) (indicating that an alleged failure "to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense, and the rehabilitative needs of [a]ppellant" was a substantial question. Accordingly, we proceed to address the merits of Appellant's claims.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Kenner***, 784 A.2d 808, 811 (Pa. Super. 2001). "An abuse of discretion is more than just an error in judgment and,

on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Smith***, 673 A.2d 893, 895 (Pa. 1996). Furthermore, the "sentencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime." ***Commonwealth v. Moore***, 617 A.2d 8, 12 (Pa. Super. 1992). Thus, "our standard when reviewing the merits of the discretionary aspects of a judgment of sentence is very narrow; this court will reverse *only* where an appellant can demonstrate a manifest abuse of discretion on the part of the sentencing judge." ***Commonwealth v. Koren***, 646 A.2d 1205, 1208 (Pa. Super. 1994) (emphasis added).

"Sentencing in Pennsylvania is individualized, and requires the trial court to fashion a sentence that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." ***Commonwealth v. Baker***, 72 A.3d 652, 663 (Pa. Super. 2013) (quotation marks and citation omitted). "When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." ***Id.***

Appellant faults the trial court's determination that Appellant's "actions established a high level of criminal sophistication." Appellant's Brief, at 40. He contends that this was the exclusive basis for the court's imposition of an aggravated sentence and therefore constitutes error. *See id.* Instead, Appellant contends the situation was merely "an everyday robbery gone bad." *Id.* Building on this assertion, Appellant argues that his involvement in planning the robbery, withholding information, and providing false information to police in the post-robbery investigation do not warrant enhanced sentencing.

Appellant also declares, albeit without authority, that the trial court "failed to expressly analyze" how its findings "warranted sentences at the top of the Aggravated Range for some offenses and near the top of the Standard Range for others." *Id.* at 42. Moreover, Appellant mentions that he had strong familial support, was a minor student-athlete at the time of the incident, no severe mental illness history, and that, implicitly, the impact on the surrounding community where the event specifically occurred was minimal, give the area's propensity for violence. *See id.*, at 43-44.

Further, Appellant suggests that he, as a minor when the crimes were perpetrated, should have been treated differently at sentencing in accordance with *Miller v. Alabama*. 567 U.S. 460 (2012) (holding that minors cannot be held for a term of mandatory life imprisonment without the possibility of parole). Appellant extends the holding of *Miller* to contend that his "status

as a juvenile alone requires [him] be treated less harshly than [an] adult[]" by way of finding that his crimes fall into the mitigated range of sentencing. Appellant's Brief, at 50.

Appellant also avers that the trial court failed to acknowledge many elements contained within the pre-sentence report and fixated too much on victim impact statements of figures only tangentially related to the victims. *See* Appellant's Brief, at 43-45. Finally, he asserts the trial court failed to incorporate the jury's "expressly stated request for leniency." *Id.*, at 45. Thus, to Appellant, there is enough mitigating evidence to demonstrate that his sentence should be reduced from where it currently stands.

In contrast, the Commonwealth argues that Appellant's disposition, including favorable factors, were all methodically considered by the trial court, and each of the sentences received by Appellant were "in conformity with the sentencing code as well as the sentencing guidelines" and were justified in light of the facts of this matter. Appellee's Brief, at 31, 33.

First, while *Miller* is sympathetic to the proposition that "children are constitutionally different from adults for purposes of sentencing," 567 U.S. at 471, the opinion concludes by stating that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.*, at 489. *Miller*'s holding is exclusively limited to a finding that a minor receiving a sentence of lifetime incarceration without the possibility of parole violates the Eighth Amendment's ban on cruel

and unusual punishment. *See id.* Without more, we cannot conclude that Appellant's sentences ran afoul of any of the principles espoused in *Miller*, especially in light of the fact that Appellant was not sentenced to a term of life imprisonment and, perhaps more importantly, the trial court *did* consider the Appellant's age and characteristics in its sentencing decision. *See* N.T., 10/17/17, at 55, 58, 63.

Second, the trial court spoke at length as to its rationale behind its sentencing decisions. *See id.*, at 51-70. The trial court, after reviewing the record before it, including the pre-sentence report and sentencing guidelines, found that Appellant demonstrated "a record of a high level of criminal sophistication in planning and the commission of the robberies. The facts show that these robberies … were the product of concerted effort, planning and afterward concealment." *Id.*, at 59-64. From its findings, the trial court sentenced Appellant to incarceration periods "within the standard range on each of his charges, except for the charges of conspiracy to commit robbery and the robbery of N.R., where he was sentenced within the aggravated range." Trial Court Opinion, 5/23/18, at 92. The trial court's findings are well supported by the record and we find no abuse of discretion in its reasoning.

Third, neither the inclusion of victim impact statements, which were submitted without objection from Appellant, *see Commonwealth v. Ali*, 149 A.3d 29, 38 (Pa. 2016) (indicating that if the crime is logically connected to a community impact suffered by specific individuals, such an impact is a

relevant consideration at sentencing), nor the jury's request for leniency, ***see*** Pennsylvania Suggested Criminal Jury Instructions § 2.08 (identifying the bifurcated nature of an adjudication of guilt and an ascertainment of punishment), warrant relief on this issue.

Accordingly, through a careful review of the trial court's findings made on the record during sentencing in addition to the facts that were adduced at trial, this Court can find no manifest abuse of discretion in the trial court's sentencing decisions.

Appellant's seventh issue proclaims reversible error in the trial court's decision to: 1) not order the total joint costs and restitution be paid jointly and severally with Appellant's co-defendants; and 2) not delay the collection of monetary fines, costs, and restitution until Appellant's release from his prison sentence. ***See*** Appellant's Brief, at 51. In short, Appellant "is indigent with no assets and no source of income and is required to serve a minimum of 34 years and a maximum of 70 years imprisonment under the sentence order; he will never be able to repay the total of restitution from earnings in the State Correctional Institution prior to parole." ***Id.***, at 53. In effect, given the fact that the Department of Corrections will deduct an amount of money with every deposit made into his account, Appellant will not receive much financial support from his family, knowing that a deduction will take place. ***See id.***, at 53-54. Appellant contends these two actions were an abuse of discretion, but has cited to no direct authority in support of either proposition.

The law regarding restitution is clear. "The court shall order full restitution: [r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss." 18 Pa.C.S.A. § 1106(c)(1)(i) (formatting altered). And further, as to the actual collection of restitution, the Department of Corrections "shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution." 42 Pa.C.S.A. § 9728(b)(5).

In addition, the trial court was not required to impose restitution jointly and severally with Reddick or Jones. Pennsylvania law already prevents a double recovery while requiring the fullest compensation possible. *See* 18 Pa.C.S.A. § 1106(c), (g); ***Commonwealth v. Pleger***, 934 A.2d 715, 720 (Pa. Super. 2007) ("A restitution award must not exceed the victim's losses."). Also, even if the trial court had imposed the restitution as joint and several with Appellant's co-defendants, Appellant would still be liable for the full amount if his co-defendants were unable to pay. ***See Sehl v. Neff***, 26 A.3d 1130, 1133-1134 (Pa. Super. 2011). Therefore, Appellant's joint and severable restitution argument fails. Additionally, given the explicit opportunity for the Department of Corrections to make monetary deductions from an inmate's account and without any evidence that the trial court somehow deviated from this statutory precept, this argument, too, fails.

As such, in finding Appellant due no relief as to any of his seven issues raised on appeal, we affirm the trial court's judgment of sentence.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2019