J-S42028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH DAVID SUPIK | : | |
| | : | |
| Appellant | : | No. 394 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000293-2021,
CP-16-CR-0000294-2021, CP-16-CR-0000295-2021,
CP-16-CR-0000296-2021, CP-16-CR-0000297-2020,
CP-16-CR-0000297-2021, CP-16-CR-0000298-2020,
CP-16-CR-0000299-2020

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: FEBRUARY 17, 2023**

Appellant, Joseph David Supik, appeals from the February 7, 2022 judgment of sentence entered in the Court of Common Plea of Clarion County after the trial court sentenced Appellant to an aggregate term of five to ten years' incarceration upon Appellant pleading guilty but mentally ill to eight counts of terroristic threats.[1]  We affirm.

The record demonstrates that, on November 8, 2021, Appellant pleaded guilty but mentally ill to eight counts of terroristic threats.  Trial Court Order,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2706(a)(1).  Appellant pleaded guilty but mentally ill to one count of terroristic threats at each of the eight trial court dockets listed in the caption *supra*.

11/15/21. The criminal charges stemmed from Appellant sending letters containing terroristic threats to various Clarion County employees, as well as Clarion County District Attorney Drew Welsh ("District Attorney Welsh") and a Clarion County magisterial district judge, while Appellant was incarcerated in a state correctional institution. At the November 8, 2021 plea hearing, the trial court, upon reviewing Appellant's psychological assessment and based upon the stipulations of the parties, found that Appellant "is suffering from a mental illness that contributed to [the] offenses." *Id.*

On February 7, 2022, the trial court sentenced Appellant to an aggregate term of five to ten years' incarceration and ordered Appellant to pay the costs of prosecution.[2] Sentencing Order, 2/8/22, at ¶1. At the time of sentencing, the trial court also found Appellant to be "severely mentally disabled and in need of treatment pursuant to the provisions of the Mental Health Procedures Act," 15 P.S. §§ 7101 – 7503, as well as 42 Pa.C.S.A. § 9727 (setting forth the disposition of a person pleading guilty but mentally ill). Sentencing Order, 2/8/22, at ¶2. As part of the sentencing order, the trial court directed the Department of Corrections to provide Appellant "with

_____

[2] The caption of the trial court sentencing order listed all eight trial court docket numbers as follows:

> 297 – 299 CR 2020
> 293 – 297 CR 2021[.]

*See* Sentencing Order, 2/8/22.

such treatment as is psychiatrically and psychologically indicated for his mental illness." *Id.*

On February 14, 2022, Appellant filed a motion for reconsideration, asking the trial court to reconsider the sentence. Motion for Reconsideration, 2/14/22, at ¶¶1-6. The motion for reconsideration also included a request to withdraw Appellant's guilty plea. *Id.* at ¶¶7-17. The trial court ordered the Commonwealth to file a response. Counsel for the Pennsylvania Office of Attorney General, for reasons discussed more fully *infra*, filed a response on February 24, 2022, and District Attorney Welsh filed a response on February 25, 2022. On March 4, 2022, the trial court denied Appellant's motion for reconsideration and the request to withdraw his guilty plea. This appeal followed.[3]

_____

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925. The Pennsylvania Office of Attorney General filed an appellate brief, addressing Appellant's second issue. District Attorney Welsh filed an appellate brief, stating that he relied on the trial court's Rule 1925(a) opinion, as well as his response filed in opposition to Appellant's motion for reconsideration to address Appellant's issues.

In his notice of appeal, Appellant listed all eight trial court docket numbers on a single notice of appeal. A copy of the notice of appeal was filed at each trial court docket. Our Supreme Court in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) held that, "the proper practice under [Pa.R.A.P.] 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket." *Walker*, 185 A.3d at 977; *see also* Pa.R.A.P. 341(a) and official comments. This Court, however, has held that the requirements of *Walker* and Rule 341 may be overlooked where there is a breakdown in the judicial system and a defendant is misinformed or misled regarding his or her appellate rights. *Commonwealth v. Larkin*, 235 A.3d 350, 354 (Pa. Super. 2020) (*en banc*), *appeal denied*, 251 A.3d 773 (Pa. 2021).

Appellant raises the following issues for review:

1.  Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion seeking leave to withdraw his guilty plea due to a conflict of interest with the Clarion County District Attorney's Office?

2.  Whether the trial court abused its discretion in sentencing [Appellant] to an aggregate sentence of [five to ten years'] incarceration upon acceptance of his plea of guilty but mentally ill to eight [] counts of terroristic threats [] for letters written to various individuals while incarcerated?

Appellant's Brief at 4 (extraneous capitalization omitted).

In his first issue, Appellant challenges the trial court's denial of his post-sentence motion seeking to withdraw his guilty plea. Appellant's Brief at 13-16.

"It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court" and, as such, this Court reviews a trial court order denying a motion to withdraw a

_____

In the case *sub judice*, the trial court sentencing order contains eight trial court docket numbers in the case caption, as detailed *supra*. Moreover, eight trial court docket numbers appear on the "post-sentence rights – rights after sentencing" form executed by Appellant and his counsel. Finally, the trial court order denying Appellant's motion for reconsideration also contains eight trial court docket numbers on a single order. **See** Trial Court Order, 3/4/22. Under these circumstances, we find the use of eight trial court docket numbers on the aforementioned trial court orders and forms was misleading and constitutes a breakdown in court operations. Therefore, although we do not condone counsel's filing of a single notice of appeal listing eight trial court docket numbers, we decline to quash Appellant's appeal on the ground the notice of appeal does not comply with the mandates of **Walker** and its progeny, as well as Rule 341.

guilty plea for an abuse of discretion. ***Commonwealth v. Hart***, 174 A.3d 660, 664 (Pa. Super. 2017), *relying on **Commonwealth v. Broaden***, 980 A.2d 124 (Pa. Super. 2009), *appeal denied*, 992 A.2d 885 (Pa. 2010).

> Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he[, or she,] must demonstrate prejudice on the order of manifest injustice. [A] defendant may withdraw [the] guilty plea after sentencing only where necessary to correct manifest injustice. Thus, post-sentence motions for withdrawal are subject to higher scrutiny since the courts strive to discourage the entry of guilty pleas as sentence-testing devices.

***Hart***, 174 A.3d at 664 (citations and quotation marks omitted).

"Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly." ***Id.*** (citation omitted).

> In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he[, or she,] was doing, and the defendant bears the burden of proving otherwise.

***Id.*** (citations and quotation marks omitted).

Here, Appellant asserts that the trial court erred in denying his request to withdraw his guilty plea after sentencing on the ground that a conflict of interest existed in District Attorney Welsh's prosecution of three of the eight criminal cases and because District Attorney Welsh was permitted to make a victim impact statement at Appellant's sentencing hearing. Appellant's Brief at 13-16. Appellant contends,

an actual conflict of interest was established once charges were filed that named District Attorney Welsh as the victim in [three] separate cases [(CP-16-CR-0000293-2021 ("CR-293-2021"), CP-16-CR-0000294-2021 ("CR-294-2021") and CP-16-CR-0000295-2021 ("CR-295-2021"))]. That conflict was acknowledged by the Clarion [County] District Attorney's Office, when those [three] cases, in addition to [two] other cases [(CP-16-CR-0000296-2021 ("CR-296-2021") and CP-16-CR-0000297-2021 ("CR-297-2021"))] were referred [] to the [Pennsylvania] Office of [] Attorney General. District Attorney[ Welsh's] decision to continue prosecuting the three [remaining] cases [(CP-16-CR-0000297-2020 ("CR-297-2020"), CP-16-CR-0000298-2020 ("CR-298-2020"), and CP-16-CR-0000299-2020 ("CR-299-2020"))] was erroneous, as the conflict was still ongoing. Further, of the three [] cases that District Attorney Welsh chose to continue prosecuting, two [] of these cases named [] a detective employed by the Clarion County District Attorney's Office, as the victim. District Attorney Welsh spoke to his concern over threats made to his office and its employees during [Appellant's] sentence hearing. [Appellant] submits that District Attorney Welsh's decision to petition the [trial] court for consecutive sentences in [a] state [correctional institution] further supports an inference of prejudice resulting from the apparent conflict.

*Id.* at 15 (record citations, extraneous capitalization, and paragraph formatting omitted).

In denying Appellant's request to withdraw his guilty plea after sentencing, the trial court stated,

[Appellant] claims that the comments made by District Attorney Welsh at [Appellant's] sentence[ing] hearing created a "conflict of interest." At no time prior to the filing of his post[-]sentence motion did [Appellant] object to the Clarion County District Attorney's [O]ffice handling the prosecution of [three of] his cases. [Appellant] was aware at all times leading up to his plea hearing and his sentence[ing] hearing that [three of] the cases were being prosecuted by District Attorney Welsh and that [District] Attorney Welsh would be present at all hearings. The comments made by District Attorney Welsh at the time of the sentence[ing] hearing did not go beyond typical comments made

- 6 -

by a prosecutor at a sentence[ing] hearing or those offered by a victim of a crime. Furthermore, there was no agreement that District Attorney Welsh would stand silent at the time of the sentenc[ing] hearing. The fact that District Attorney Welsh made comments at [Appellant's] sentenc[ing] hearing does not provide grounds for a withdrawal of a guilty plea after sentencing as [District Attorney Welsh's actions] in no way resulted in [Appellant] entering his plea unknowingly, unintelligently, or involuntarily.

Trial Court Opinion, 5/26/22, at 3-4 (extraneous capitalization omitted).[4]

A review of the record demonstrates, and Appellant concedes, that counsel from the Pennsylvania Office of Attorney General served as the prosecutor in CR-293-2021, CR-294-2021, CR-295-2021, CR-296-2021, and CR-297-2021, while District Attorney Welsh remained the prosecutor in CR-297-2020, CR-298-2020, and CR-299-2020. *See* 71 P.S. § 732-205(a)(3) (stating, "The Attorney General shall have the power to prosecute in any county criminal court the following cases[ . . . u]pon the request of a district attorney . . . who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his[, or her,] office"); *see also Commonwealth v. Lutes*, 793 A.2d 949, 956 (Pa. Super. 2002) (stating, a conflict of interest exists when a district attorney has a direct financial interest or a non-economic, personal interest in the outcome of the prosecution), *relying on Commonwealth v. Eskridge*, 604 A.2d 700 (Pa. 1992) and *Commonwealth v. Balenger*, 704 A.2d 1385 (Pa. Super. 1997).

_____

[4] For ease of reference, we assigned page numbers to the trial court's unpaginated Rule 1925(a) opinion.

After Appellant pleaded guilty but mentally ill to eight criminal charges of terroristic threats, District Attorney Welsh, in his capacity as prosecutor in the three aforementioned cases, made the following statement at Appellant's sentencing hearing:

> Your Honor, . . . I will speak at this moment addressing the cases which I'm prosecuting, not the cases in which I may be a victim in any way.
>
> [Appellant], I think, I would imagine, presents a difficult situation for the [trial] court in trying to craft a sentence. Obviously, this is a guilty but mentally ill sentence in this situation. I know the law is clear [] that it should be the same sentence, but requires him to get certain mental health treatment aspects.
>
> I know from my experience in dealing with [Appellant,] prosecuting his cases, he does know the difference between right and wrong. It's not a question that he can't control his actions.
>
> But with the letters that he sent to various individuals – and you look at the [pre-sentence investigation ("PSI") report], you can see numerous, numerous other counties and other individuals where letters [were] sent or threats [were] made [] in some sort of way.
>
> I know looking at the sentencing options and things I would recommend, that there are various factors you look at. We are looking at deterren[ce] and we're looking at rehabilitation and we're looking [at] all these different things.
>
> And I can understand that part of the thinking could be, well, a lot of time he was in state prison for a sentence when he sent these letters, so seemingly that's not working.
>
> We have also had [Appellant] in the county jail, and we've had issues at the county jail with new criminal charges. And we've had him on probation where there's been [probation] violations.
>
> So over and over again, it seems to be that nothing is working. At this point[,] my hope would be that the sentence under guilty but mentally ill does [require Appellant] to get treatment at some point, but I also think there is a compelling reason for there to be

a protection of the public here with the various amounts of threats that are at issue.

So the sentences – I think there's eight cases pending – I do not represent him [sic] in all of those [cases], but each of those cases all have the restorative sanctions to less than 12 months sentence [option].  I do think it would be appropriate under this guilty but mentally ill sentence to confine [Appellant] to additional time for state incarceration[.  ]I don't believe that probation is appropriate at this point – and that the sentences [should] run consecutively to each other.

N.T., 2/7/22, at 5-7 (extraneous capitalization omitted).  After explaining that the sentences for the three cases he was prosecuting warranted confinement in a state correctional institution coupled with the opportunity to receive mental health treatment, District Attorney Welsh spoke about the personal impact of the terroristic threats in the three cases where he was the victim but that were being prosecuted by the Pennsylvania Office of Attorney General as follows:

I will just speak for a second in the cases in which I don't represent the Commonwealth, but I will say, it's easy to gloss over – [Appellant] has so many letters that he sent, a number of people that have been threatened, and it's easy to say to kind of roll with it.

But I will say when someone does threaten you with the specificity that [Appellant] threatened me with [in] letters, it is concerning. You have concerns for your safety [and] your family['s safety. Appellant] made threats towards [the District Attorney's Office] and questioned the office employees.

So while I understand that [Appellant] does have mental health issues, I don't think anything should diminish the seriousness of the effect it does have on people when they are threatened in a serious manner such as I have and such as many other people have.

So[,] I know the [trial] court has probably considered a lot of factors and I will defer to your discretion as far as the sentence. Thank you.

*Id.* at 7-8 (extraneous capitalization omitted).

Counsel for the Pennsylvania Office of Attorney General went on to make the following statement regarding Appellant's sentence:

Very briefly, Your Honor, and I just incorporate a lot of [District Attorney] Welsh's comments as far as sentencing goes. But as the [trial] court may be aware, following [Appellant's] crimes across Western Pennsylvania has become sort of a full-time job for me. I have cases before this [trial] court. I also have cases with [Appellant] for the same type of behavior in Somerset County, Forest County, and there's an investigation into one in Armstrong County. And they are – all the crimes are of [a] similar nature, this letter-writing campaign in which [Appellant] terrorizes people [while he is incarcerated]. And some of the victims in the cases are [trial] court employees and district attorneys and [trial court] judges and [magisterial district judges] and sheriffs, but there are also civilian victims in some of his other cases. Clearly, very clearly, a mental health component has to be a part of the [trial] court's sentence. I would defer to the [trial] court's discretion as it relates to the sentence that is imposed on [Appellant] today. Thank you.

*Id.* at 8-9 (extraneous capitalization and paragraph formatting omitted).[5]

In fashioning Appellant's sentence, the trial court was permitted to consider any evidence it deemed relevant, including District Attorney Welsh's victim impact statement. ***Commonwealth v. King***, 182 A.3d 449, 455 (Pa. Super. 2018) (stating, the "purpose of victim impact statements is to personalize the crime and to illustrate the human effects of it"). Moreover,

---

[5] Appellant's counsel also made a statement regarding Appellant's sentence. ***See*** N.T., 2/7/22, at 9-15.

Appellant was aware, pursuant to the trial court scheduling order, which listed the eight trial court docket numbers, that he was being sentenced on eight criminal convictions at a single sentencing hearing and that District Attorney Welsh would be present at the sentencing hearing because he represented the Commonwealth in three of the criminal cases. *See* Trial Court Order, 11/16/21.

Upon review, we concur with the trial court, and the record supports, that Appellant failed to demonstrate prejudice on the order of a manifest injustice.[6] Appellant was aware throughout the eight criminal proceedings that District Attorney Welsh represented the Commonwealth in three of the cases while counsel from the Pennsylvania Office of Attorney General represented the Commonwealth in the remaining five cases, including the three cases in which District Attorney Welsh was a victim. After pleading guilty but mentally ill in each criminal case, Appellant was aware that his sentencing hearing would involve eight criminal cases at a single hearing and that District Attorney Welsh would be at the sentencing hearing. At the sentencing

_____

[6] There was no support in the certified record demonstrating a conflict of interest claim in the three cases that District Attorney Welsh prosecuted. These three cases (CR-297-2020, CR-298-2020, and CR-299-2020) involved a detective from the District Attorney's Office and a probation officer. District Attorney Welsh did not have an economic or financial interest in the prosecution or a personal, familial interest in the three cases. *See Lutes*, *supra*. District Attorney Welsh was not the victim in the three cases, and the victims were not members of his family. Therefore, pursuant to appliable caselaw and statutory authority, there was no conflict of interest in his prosecution of these cases and, thus, no basis to claim a manifest injustice.

hearing, District Attorney Welsh offered argument, as the prosecuting attorney in three of the cases, supporting consecutive sentences in a state correctional institution coupled with the opportunity for Appellant to receive mental health treatment while incarcerated. District Attorney Welsh also offered a statement, distinct from his argument as prosecutor, as to the impact Appellant's threats had on District Attorney Welsh as the victim in three of the cases. Although we can find no case on-point with this set of unique circumstances, we concur with the trial court that District Attorney Welsh's argument as prosecutor and his victim impact statement "did not go beyond typical comments made by a prosecutor at a sentenc[ing] hearing or those offered by a victim of a crime." Trial Court Opinion, 5/26/22, at 4. Therefore, we discern no abuse of discretion in the trial court's denial of Appellant's request to withdraw this guilty plea after sentencing.

Appellant's second issue raises a challenge to the discretionary aspects of his sentence, arguing that the trial court abused its discretion by making "no findings on the record explicitly specifying the reasons for either the consecutive sentences" or "why [each individual sentence] justified [an] aggravated range sentence[.]" Appellant's Brief at 19.

> It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his appeal as a petition for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010):

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

[*Moury*, 992 A.2d] at 170. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted). If an appellant fails to raise a challenge to the discretionary aspects of a sentence either by presenting a claim to the trial court at the time of sentencing or in a post-sentence motion, then the appellant's challenge is considered waived. *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted), *appeal denied*, 75 A.3d 1281 (Pa. 2013). A substantial question exists when the appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Sentencing Code or (2) is "contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011).

It is well-established that

- 13 -

the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. *Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005)[,] *citing Commonwealth v. Hoag*, [] 665 A.2d 1212, 1214 ([Pa. Super.] 1995)). Long standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005)[,] *citing Commonwealth v. Graham*, [] 661 A.2d 1367, 1373 ([Pa.] 1995)). A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. *Lloyd*, 878 A.2d at 873. We see no reason why a defendant should be afforded a "volume discount" for his crimes by having all sentences run concurrently.

*Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) (quotation marks and original brackets omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015). "While a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question." *Commonwealth v. Hicks*, 151 A.3d 216, 227 (Pa. Super. 2016), *citing Commonwealth v. Haynes*, 125 A.3d 800, 807-808 (Pa. Super. 2015), *appeal denied*, 167 A.3d 1287 (Pa. 2017). This Court has recognized that,

a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

*Zirkle*, 107 A.3d at 133-134 (citations omitted). An assertion of an excessive sentence coupled with allegations that the trial court failed to consider

mitigating factors and failed to state sufficient reasons on the record for consecutive sentences raises a substantial question. **Commonwealth v. Brown**, 249 A.3d 1206, 1211 (Pa. Super. 2021).

Here, the record reflects that Appellant filed a timely notice of appeal, properly preserved challenges to the discretionary aspects of his sentence in his post-sentence motion, and included a Rule 2119(f) statement in his brief. Appellant's Brief at 11-12. As such, Appellant complied with the technical requirements to challenge the discretionary aspects of his sentence. **Hill**, 210 A.3d at 1116. Therefore, we review Appellant's Rule 2119(f) statement to see if he presents a substantial question.

In his Rule 2119(f) statement, Appellant argues that the trial court provided an insufficient basis on the record for sentencing Appellant in the aggravated sentencing range when it sentenced Appellant to one to two years' incarceration at each of the eight criminal dockets. Appellant's Brief at 11. Appellant contends that his eight individual sentences of one to two years' incarceration, five of which were set to run consecutively for an aggregate sentence of five to ten years' incarceration, were excessive considering the significant role Appellant's mental health contributed to his actions. **Id.** at 12. In so arguing, we find that Appellant raises a substantial question regarding the trial court's alleged failure to consider his mental health needs prior to imposing consecutive sentences and the alleged failure to state sufficient reasons on the record for sentencing Appellant in the aggravated sentencing range. **Brown**, 249 A.3d at 1211. Therefore, we will address Appellant's

claim challenging the discretionary aspects of his sentence based on the trial court's alleged failure to consider the impact of his mental health needs and to state sufficient reasons on the record for imposing consecutive sentences in the aggravated sentencing range.

Appellant asserts that the trial court "made no findings on the record explicitly specifying the reasons for either the consecutive sentences on five [] of the [trial court] dockets or why [each individual sentence] justified [an] aggravated range sentence[.]" Appellant's Brief at 19. Appellant submits that "his mental health diagnosis played an extensive role in contributing to his criminal conduct" but that the trial court failed to consider his mental health needs "when crafting an appropriate sentence." *Id.*

It is well-established that "[w]hen imposing a sentence, a [trial] court must consider the factors set forth in 42 Pa.C.S.A. § 9721(b)." **Commonwealth v. Feucht**, 955 A.2d 377, 383 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). Section 9721(b) of the Sentencing Code, in pertinent part, states,

> the [trial] court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [S]ection 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The [trial] court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under [S]ection 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation).

42 Pa.C.S.A. § 9721(b) (footnote omitted). "The [trial] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the [trial] court of the statutory considerations."

**Feucht**, 955 A.2d at 383 (citations omitted).

Additionally,

[i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the [trial court] had the benefit of a [PSI] report, it will be presumed that [the trial court] was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Additionally, the [trial] court must state its reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI] report; thus properly considering and weighing all relevant factors.

**Commonwealth v. Conklin**, 275 A.3d 1087, 1098 (Pa. Super. 2022) (case citation omitted), *appeal denied*, 285 A.3d 883 (Pa. 2022).

Appellate review of a trial court's sentencing determination is governed by Section 9781(c) of the Sentencing Code.

Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the [trial] court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."

***Commonwealth v. Bowen***, 975 A.2d 1120, 1123 (Pa. Super. 2009), *citing* 42 Pa.C.S.A. § 9781(c).

At the sentencing hearing, prior to imposing the aforementioned sentence on Appellant, the trial court stated the following reasons for its sentence:

> I [(trial court)] have reviewed the facts and circumstances of all of your cases. I've also reviewed your [PSI] report, and I've also reviewed the [psychological] assessment[.] I have taken into consideration that your plea in this case is to eight counts of terroristic threats and is an open plea. The guidelines for your offenses provide for a sentence anywhere in the range of probation, standard guidelines, to less than one year with an aggravated range of less than 15 months.
>
> I think obviously what stands out to me is that you have continued to engage in a course of conduct where you have threatened several members of the justice system in Clarion County, a [magisterial district] judge, our district attorney, correction officers, probation – people affiliated with the probation department. And not only did you do it once, but you did it eight times. And also, your threats were of a very specific nature, indicating the actions that you wanted to carry out to harm these people – that's very concerning – and the specifics that you went to as to how you intended to harm these people. It's certainly concerning for those individuals. It's scary for them to receive information, knowing someone is having these thoughts about them.
>
> Obviously, **I have taken into consideration that information that's been provided to me that you are suffering from mental illness**. From the information that's been provided, it doesn't look like you've received any treatment to help you deal with that. So, I do think based on the information that has been provided to me, that you are in need of treatment that can be provided by a mental health facility. So[,] I am willing to accept your plea of guilty but mentally ill, **because I do think your mental health has played a significant role in the crimes you have committed**. Apparently not only here, but throughout the Commonwealth.

- 18 -

Having said that, I think you understand, as [District] Attorney Welsh pointed out, right from wrong, and I think that you know what you did was wrong. The concern to me, and its something I have taken into consideration to determine what your appropriate sentence is, is whether [] you have the propensity or desire to actually carry out any of these threats that you've made. That's certainly concerning. I don't know if they are empty threats or if they're something you would intend to do if you were released from incarceration and had the ability to carry these things out. So[,] I have certainly taken that into consideration, protection to the public, in addition with your need for rehabilitative services.

So having said that, I want your sentence to reflect the seriousness of the threats that you have made. I want it to be extensive enough that you have sufficient time under the authority of the Department of Corrections to receive whatever mental health services you need to make sure that you get your mental health under control, and that if you do have any thoughts or continued thoughts about causing harm to any of these individuals, that that is substantially addressed by mental health providers to make sure that when you are released from incarceration and when you are released from a treatment facility, that you have been able to significantly address your mental health needs and that you will not carry out these threats against these individuals. And I want the individuals threatened to be able to feel safe in knowing that you received that treatment and have been incarcerated long enough that you have been able to address these issues that you are having. Because certainly, their state of mind when you are released at some point in the future is to be important, as well.

N.T., 2/7/22, at 15-18 (extraneous capitalization omitted, paragraph formatting modified, emphasis added).

The record indicates that, prior to sentencing Appellant, the trial court was in receipt of, and considered, Appellant's PSI report, as well as the psychological assessment detailing Appellant's mental health needs. The trial court acknowledged the seriousness of Appellant's terroristic threats, noting the specificity contained within the threats, and the need to protect the public

from Appellant carrying out those threats. The trial court also considered Appellant's history of making these types of terroristic threats against persons involved in the judicial system. The trial court further acknowledged that Appellant needed mental health treatment in order to rehabilitate himself and to prevent him from carrying out his threats. Finally, the trial court noted the standard sentencing guidelines of restorative sanctions to less than 12 months' incarceration and the aggravated sentencing range of restorative sanctions to less than 15 months' incarceration. In fashioning Appellant's individual sentences in the aggravated sentencing range, and running five of those sentences consecutively, the trial court explained the need to provide Appellant sufficient time to obtain treatment for his mental health needs in order to rehabilitate Appellant and provide protection to the public.

Upon consideration of the record, as a whole, and based upon the trial court's consideration of the PSI report and psychological assessment, we discern no abuse of discretion or error of law in Appellant's sentence. As such, Appellant's claim challenging the discretionary aspects of his sentence is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/17/2023