J-S22010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIO MATTHEW GATTI | : | |
| | : | |
| Appellant | : | No. 768 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 19, 2023
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0001386-2020

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: August 30, 2024**

Mario Matthew Gatti appeals[1] from the judgment of sentence entered in the Westmoreland County Court of Common Pleas on January 19, 2023. On appeal, Gatti challenges the weight of the evidence supporting his convictions and the discretionary aspects of his sentence. We affirm.

The trial court accurately summarized the factual history of this case as follows:

> The instant case arises out of the shooting death of Michael Coover on January 16, 2020 in Arnold, Westmoreland County. During trial, [] Coover's fiancée, Tanae Warren (hereinafter "Tanae") testified that she, [] Coover, her stepmother, her father,

---

[1] Gatti purports to appeal from the order entered on June 15, 2023, in which the trial court denied his post-sentence motion. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." ***Commonwealth v. Shamberger,*** 788 A.2d 408, 410 n. 2 (Pa. Super. 2001) (*en banc*). The caption reflects that this appeal is properly taken from the January 19, 2023 judgment of sentence.

her younger brother, and her son all lived at a home in Arnold. Tanae stated that on January 16, 2020, at approximately 4:00 p.m., [Gatti] entered the residence in which they lived without knocking, and she immediately observed [Gatti] holding a handgun. Tanae indicated that she immediately got up off of the couch in the living room where she, her sister, and her baby were sitting, and she tried to get in between [Gatti] and [] Coover who was sitting in a chair in the kitchen. Tanae confirmed that she was aware of previous issues involving [Gatti] and [] Coover, which [had] begun two months prior over [] Coover owing [Gatti] money for drugs. Tanae indicated [Gatti] asked her where [] Coover was, and he eventually pushed her out of the way and proceeded to the kitchen. Tanae stated that she then observed cold grease flying around the corner and before she could get to her feet, she heard two gun shots. Tanae testified that on [Gatti]'s way back out of the front door, [Gatti] pointed the gun at her and said that if she told anyone, he would be back. Tanae indicated that she then went into the kitchen and observed [] Coover laying on the floor, gasping for air.

Tanae's sister, Martina Warren (hereinafter "Martina"), also testified relative to her observations on the date of the incident. Martina testified that on January 16, 2020, she was at her stepmother's house with Tanae, her father, her brother, her brother's friend, [] Coover, and Tanae's baby. Martina confirmed that while she, Tanae, and Tanae's infant son were sitting in the living room, [Gatti] entered the home with a gun and went towards the kitchen where [] Coover was. Martina indicated that at that time she went to tend to her nephew, and she observed Tanae try to block [Gatti] from entering into the kitchen towards [] Coover. Martina testified that at this point, [Gatti] "threw [Tanae] across the room". Martina indicated that she remained in the living room with her nephew, but she could hear one gun shot, a tussle including a pot of grease hit the wall, and then a second gun shot. Martina stated that after the second shot, she observed [Gatti] point the gun at them, say something to Tanae, and leave out of the same door that he came in.

Detective John Clark of the Westmoreland County Detective's Bureau testified that he, along with Sergeant Nixon of the Arnold Police Department, canvased the area after the incident and obtained video recordings from nearby residences containing footage from the incident which depicted gunshot noises followed

by [Gatti] running in the direction of his vehicle. The video also depicted Gatti stop and put something in a Jeep in the alleyway.

Detective John Swartz of the Westmoreland County District Attorney's Office, Forensic Service Division testified that he located two fired shell casings and two cellphones laying on the floor near [] Coover's body; however, no firearms were recovered from the scene during the investigation.

At trial, the parties stipulated that forensic pathologist Dr. Cyril H. Wecht performed an autopsy of [] Coover and made the following findings:

A) a grazing bullet wound was found on the victim's upper left arm with a bullet then entering his left chest wall and exiting the left chest wall. Aside from the entry and exit wound, the bullet caused no other damage to any internal organs. The bullet travelled on a left to right trajectory and no wound is shown in Commonwealth's Exhibit 25. B) a bullet wound of entrance was located on the victim's left chest wall. The bullet pierced his left lung and perforated his spine. The bullet was recovered from the victim's back. It had a left to right trajectory. C) the cause of death of Michael Coover, Jr. was a hemothorax caused by the bullet that pierced his lung and perforated his spine. A hemothorax is a collection of blood between the chest wall and lung. The manner of death was homicide.

John Mandarin of the Westmoreland County District Attorney's Office served as the lead detective on this case. Detective Mandarin indicated that upon arrival on scene, he observed oil all over the floor in the kitchen and noticed the victim was deceased. After speaking with witnesses and investigating the incident, Detective Mandarin filed charges against [Gatti] for criminal homicide later in the day. Detective Mandarino indicated that he reviewed the video footage collected by Detective Clark and through an investigation, he identified the Jeep owner as Ciera Price and the gun owner as James Garland. After interviewing [] Garland, Detective Mandarino indicated that he recovered the firearm used in the murder. Detective Manderino also testified that the cellphones located near [] Coover's body were examined, and text messages sent from [] Coover's phone

- 3 -

to [Gatti]'s phone were recovered. A forensic examination was performed and revealed text messages sent from [] Coover's cellphone(s) to [Gatti]'s cellphone on November 17, 2019, November 18, 2019, November 20, 2019, December 14, 2019, and January 16, 2020. The forensic examination also produced two JPG images, one being a photograph of an AR 47 style rifle.

[] Price, who lived directly behind the residence in which the victim was staying, also testified about her involvement with [Gatti] on the date of the incident. [] Price testified that she returned home after purchasing a new vehicle, namely a 2014 black Cherokee Latitude Jeep, and as the car was parked outside her home, she observed [Gatti] driving and yelled out his name. According to [] Price, [Gatti] pulled up in front of her house and said hi to [] Price and her sister. [] Price indicated that she then got into her vehicle and began driving around; however, she began to experience car problems, and as she started to drive back to her home, she encountered [Gatti] again and observed him running up the alley before tossing a gun into her car. [] Price testified that [Gatti] said, "take this or I'll kill you", and he ran back to his car. [] Price indicated that she began driving, and when she was a couple of miles from home, she threw the gun out of her car onto the side of the road. [] Price testified that on the following day, she called her friend James Garland and informed him about her encounter with [Gatti] and the events following their interaction. According to [] Price, [] Garland said that "he needed that gun", and she drove him to the location, and he immediately located the gun on the ground.

[] Garland, who was neighbors with [Gatti], testified that he provided [Gatti] with a gun for protection when their apartments were [shot] at on a prior occasion. [] Garland further corroborated the testimony of [] Price and acknowledged [] finding the gun after [] Price disposed of it. [] Garland said that he took the gun apart, hid part of the gun at his residence, and threw the barrel and the springs into the Allegheny River later that night. Detective Clark confirmed that he met with [] Garland and the gun was recovered from [] Garland's residence; however, despite efforts, the barrel and springs were never recovered.

At the time of trial, Richard Paul Petros testified that he was currently incarcerated at the Westmoreland County Prison, and while there, he met [Gatti], and [Gatti] discussed this case with him. Specifically, [] Petros indicated [Gatti] confessed to shooting

- 4 -

the victim. [] Petros stated [Gatti]'s demeanor was "jokingly", "like bragging" when he was describing this case.

Detective Ray Dupilka of the Westmoreland County Detective's Bureau testified that as part of this investigation he was assigned to assist in witness interviews and aided in the collection of evidentiary items. Detective Dupilka's testimony revealed that on February 5, 2020, he interviewed [Gatti]'s girlfriend, Amanda Dupree for information regarding her contact with [Gatti] following the incident. According to Detective Dupilka, [] Dupree informed him that she was with [Gatti] and her son in Atlanta, Georgia after the incident.

Officer Matthew Morrison of the Jacksonville Beach Police Department testified that on April 19, 2020, he, along with other officers, located [Gatti] in Florida and took him into custody on an outstanding warrant. Officer Morrison testified [Gatti] initially indicated that his name was "Mark Eugene Williams".

[Gatti] also elected to testify at trial. [Gatti] testified that he first met [] Coover through his girlfriend, [] Dupree. [Gatti] indicated that in the beginning of November he and [] Coover got into a fist fight over a dispute involving money. [Gatti] stated that a day or two later, he began getting text messages from two phone numbers who he believed were from [] Coover. Additionally, [Gatti] stated that someone shot into the house where he was residing; someone shot at his neighbor's vehicle; and he observed [] Coover shoot at him from a black vehicle when he was walking his dog. [Gatti] testified that approximately a week before Christmas, someone shot at him from the same black vehicle. [Gatti] never made any reports to police involving these or any prior incidents.

[Gatti]'s testimony revealed that on the date of the incident, he went to [] Coover's residence for the purpose of "talking this out". [Gatti] stated that he entered the residence with his gun in his coat pocket, observed [] Coover, pushed Tanae out of the way, and stepped into the kitchen before being hit with grease. [Gatti] indicated that he then slipped and fell on the grease, and as the gun was in his hand, the first shot went off. [Gatti] testified that [] Coover was still holding the pot at that time and it appeared that [] Coover was going to hit him with it so [Gatti] pulled the trigger. [Gatti] stated that he was afraid of getting hit by the pot.

> [Gatti] confirmed that he left the area because he was afraid of retaliation.

Opinion and Order of Court, 1/15/23, at 1-7 (citations omitted).

On January 16, 2020, Gatti was charged by criminal complaint with one count each of criminal homicide, burglary, and possession of a firearm prohibited, and three counts each of recklessly endangering another person ("REAP"), and terroristic threats. Charges for first-degree and second-degree murder were subsequently added.

On October 21, 2022, following trial, a jury found Gatti guilty of first-degree murder, second-degree murder, third-degree murder,[2] burglary, person not to possess a firearm, and all counts of REAP and terroristic threats. Sentencing was deferred for preparation of a presentence investigation report ("PSI").

On January 13, 2023, the trial court sentenced Gatti to concurrent terms of life imprisonment without the possibility of parole for first-degree murder and second-degree murder. The sentence for third-degree murder merged with the sentence for second-degree murder. Additionally, the court entered consecutive sentences to be served on the remaining charges.

Gatti filed timely post-sentence motions: (1) a motion for a new trial on the grounds that the verdicts were against the weight of the evidence, and

---

[2] Prior to deliberations, jury instructions were discussed, and third-degree murder and voluntary manslaughter were added to the verdict slip.

(2) a motion to modify/vacate sentence, asserting the court abused its discretion by imposing consecutive sentences to the concurrent life sentences imposed for first and second-degree murder. Following a hearing on both motions, the court took the matter under advisement in order for the parties to submit briefs. The court subsequently denied the post-sentence motions. This timely appeal followed.

Gatti raises the following issues on appeal:

1. The guilty verdict rendered against [Gatti] was against the weight of the evidence. Specifically, the verdicts were against the weight of the evidence because the Commonwealth failed to disprove [Gatti's] self-defense claims.

2. The [c]ourt abused its discretion by imposing consecutive sentences to the concurrent life sentences imposed [for first and second-degree murder].

Appellant's Brief, at 4.

In his first claim, Gatti contends the verdicts were against the weight of the evidence. Specifically, Gatti argues that he acted in self-defense and that the Commonwealth failed to meet its burden to disprove self-defense.

We do not review challenges to the weight of the evidence *de novo* on appeal. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. **See id**.

"[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citation omitted). A verdict is said

to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations and internal quotation marks omitted).

In advancing his weight challenge, Gatti claims the Commonwealth failed to disprove his self-defense claims. Gatti acknowledges that various witnesses testified that he entered the decedent's residence unannounced and without knocking. ***See*** Appellant's Brief, at 13. Despite this, Gatti insists his own testimony justified his intent in entering the residence. ***See id***. at 13-14.

The trial court set forth the relevant standard of review and concluded the verdicts were not against the weight of the evidence. ***See*** Trial Court Opinion, 6/15/23, at 9. The trial court found there was credible evidence from multiple witnesses to establish that Gatti did not act in self-defense. ***See id***. at 9-11; ***see also Commonwealth v. Houser***, 18 A.3d 1128, 1136 (Pa. 2011) (concluding the trial court did not abuse its discretion in denying appellant's weight challenge where the jury did not find appellant's self-serving testimony credible).

Essentially, Gatti asks us to reassess credibility determinations, which we cannot do. The jury as factfinder was free to believe all, some, or none of the testimony presented to them. ***See Commonwealth v. Frein***, 206 A.3d

1049, 1063 (Pa. 2019). By virtue of the verdict, it is clear the jury credited the testimony from the numerous witnesses, rather than Gatti's own self-serving testimony. The witness testimony was consistent that Gatti entered the residence without permission, with a gun in his hand, immediately pushed his way to the kitchen where the victim was, and seconds later two shots were fired. This testimony was not so unreliable as to be based on conjecture. Rather, in light of the extensive testimony and evidence offered by the Commonwealth, which negated the elements of self-defense, the jury's verdict does not shock one's sense of justice. Accordingly, we cannot find the trial court abused its discretion. This issue is without merit.

In his second and final issue, Gatti contends the trial court abused its discretion by imposing consecutive sentences to the concurrent life sentences imposed for first and second-degree murder. Gatti concedes this is a challenge to the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial

question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Gatti preserved his issue through a timely post-sentence motion for reconsideration of sentence and filed a timely appeal. Further, counsel has included the required Rule 2119(f) statement.

We must examine Gatti's Rule 2119(f) statement to determine whether a substantial question exists. ***See Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id***. (citation and emphases omitted); ***see also*** Pa.R.A.P. 2119(f).

Gatti "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." ***McAfee***, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Tirado***, 870 A.2d at 365 (citation omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted).

Gatti asserts the court abused its discretion by imposing consecutive sentences to the concurrent life sentences imposed. Specifically, Gatti contends the court failed to outline its reasoning for imposing the aggregate consecutive sentence in any form. In addition, Gatti asserts the court failed to consider mitigating information. Finally, Gatti argues that imposing consecutive sentences served no legitimate purpose.

We have previously stated that a challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question. *See Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005). However, our Court has recognized that a consecutive sentence can be so excessive that it may create a substantial question. *See Commonwealth v. Moury*, 992 A.2d at 171-72. In determining whether a substantial question has been raised, our focus is on "whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in the case." *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010) (footnote omitted).

Gatti was convicted of three separate murder charges, burglary, a firearms offense, and multiple counts of terroristic threats and REAP. The court was required to impose a life sentence on the murder charges. The court then imposed an aggregate term of 21 to 45 years' incarceration for the non-murder charges, to be run consecutive to the life sentences. Although

- 11 -

consecutive sentences to a life sentence may seem unnecessary on the surface, it is not manifestly excessive in light of the crimes Gatti committed. We cannot conclude the aggregate sentence was excessive when compared to Gatti's criminal conduct. As such, Gatti's challenge to the consecutive nature of his sentence does not raise a substantial question. *See Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010).

In any event, assuming, *arguendo,* that Gatti had presented a substantial question, thus permitting our review,[3] we note the trial court heard and considered five victim impact statements, as well as a brief statement from Gatti on his own behalf. Further, the court reviewed and considered the PSI. After considering the above information, the court imposed the

_____

[3] On appeal, Gatti focuses almost exclusively on the trial court's stated consideration of his lack of remorse. *See* Appellant's Brief, at 16-17, 34-35. Notably, this argument is not included in Gatti's 1925(b) concise statement, or in his Rule 2119(f) statement and could be considered waived for this reason alone. *See* Pa.R.A.P. 1925(b)(4)(vii).

Further, Gatti has misrepresented the trial court's reasoning for its sentence in its opinion. While the court did state that it considered Gatti's lack of remorse, Gatti wholly ignores the multiple other reasons stated by the court. First, the court noted its consideration of the victim impact statements, counsel's arguments, and Gatti's own statement. *See* Trial Court Opinion, 6/15/23, at 12. The court also noted its consideration of the PSI, which included relevant information about Gatti's character and extensive prior criminal history. *See id*. Finally, his lack of remorse was only one consideration in a list of other factors considered, including the interest of all of the individual victims in this matter and the circumstances and severity of the offenses. *See id*.

mandatory life sentences on the murder charges, and consecutive sentences on the non-murder charges.

Our review leads us to disagree with Gatti that the trial court abused its discretion in formulating the consecutive sentences. Thus, even if we reached the merits of the issue, we would find the trial court did not abuse its discretion. ***See Commonwealth v. Downing***, 990 A.2d 788, 792–93 (Pa. Super. 2010) ("Sentencing is vested in the discretion of the trial court and will not be disturbed absent a manifest abuse of that discretion.") (citation omitted).

As we find neither of Gatti's issues merits relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

August 30, 2024